[No. 26030. Department One. August 21, 1936.]

ERNEST BRODERSON, *Appellant*, v. RAINIER NATIONAL
PARK COMPANY, *Respondent*.[1]

*Rex S. Roudebush,* for appellant.

*Ellis & Evans,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiff to recover for personal injuries sustained by him, resulting from the alleged negligence of the defendant in the maintenance of a toboggan course in Rainier national park.

On the afternoon of December 31, 1934, the plaintiff went to Longmire Springs in the park for the purpose of engaging in snow sports, particularly toboggan sliding. The toboggan course, approximately eleven hundred feet long, was constructed in such manner as to confine the coasters within a snow-packed groove.

[1]Reported in 60 P. (2d) 234.

The first six hundred feet of the course was a steep incline. It then gradually curved up onto a level snow field.

On arriving at Longmire, the plaintiff rented a toboggan from the defendant for use on the course. Patrons were required to make a cash deposit to insure payment at the end of the sport, and to sign a printed slip entitled "Notice to Patrons," embodying a receipt for the sum deposited and the equipment rented, as well as an assumption by the patron of the risk involved in the use of the course. The original of this notice, printed on white paper, was retained by the defendant, and a copy, printed on pink paper, given to the patron, to be returned to the defendant when the unused part of the deposit was called for. The following is a copy of the notice signed by the plaintiff in this instance:

"RAINIER NATIONAL PARK Co.

"Winter Service Ticket

"No. 4040                                    December 31, 1934

"Notice to Patrons

"All forms of winter sports are attended with more or less danger, and participants are especially urged to be careful; caution is the best possible safeguard.

"For the convenience and pleasure of Park visitors, Rainier National Park Company will maintain a limited supply of toboggans, skis, snow shoes and other winter sports equipment for service on a rental basis. This equipment is not in any way guaranteed, either as to correct construction or safe use. Parties renting and using this equipment will do so entirely upon their own judgment and at their own risk.

"A toboggan slide and ski slides have been built, but the Company does not in any way vouch for the correct construction or safe operation of any of these devices or equipment. Parties using any or all of the equipment or facilities indicated will do so entirely at their own risk.

| No. | Equipment | Time | Amount | No. Trips | | Rate | Amount |
|-----|-----------|------|--------|-----------|--|------|--------|
| | Shoes | | | Guide Serv. | | | |
| | Rubbers | | | | | | |
| | Breeches | | | | | | |
| | Shirts | | | | | | |
| | Caps | | | Total | | | |
| | Gloves | | | Total Equipment Rental | | | 1.00 |
| | Glasses | | | Total Trips Taken | | | |
| | Alpen Stks. | | | | | | |
| | Snow Shoes | | | Deposit Paid | | | 3.00 |
| | Skis—Pro. | | | | | | |
| | Skis—Am. | | | Total | | | |
| 1 | Toboggan | | 1.00 | Deposit Refunded | | | |
| | | | | | Net Cash | | 1.00 |
| | | | | Received Payment: | | | |
| | | | | Guide Department | | | |
| | Total | | 1.00 | By: Jess D. | | | |

Time Out    2:15 P: M.     Note: This Ticket to be Retained
Time In     4:15 P. M.      in Office for Record

"I Have Received the Above Specified Equipment and Same Will Be Used at My Risk and Under Conditions Named in 'Notice to Patrons' Printed Above.

"Address   E. Broderson           *Signed*
        "National, Wn."

After the plaintiff, accompanied by his wife, had made three descents on the toboggan, he stopped sliding for thirty or forty minutes to make some inquiry at the office of the defendant. Returning to the course, he and his wife again went to the top of the slide for the purpose of resuming the sport.

It is alleged in the complaint that, during the absence of plaintiff, many other persons had gone down the course, and that, by reason of use, the course rapidly became faster and the toboggans went greater distances out on the snow field at the end of the slide, developing a dangerous condition at the lower end of the course. A snow mound or hump was formed where the toboggan left the runway for the broad snow field, and a hole or depression of increasing

depth was formed a short distance beyond by the impact of the toboggans "after hurtling through the air and landing on the snow field." As the snow bank became larger and the hole beyond deeper, the toboggans became more and more unmanageable as they struck the snow mound and shot through the air at great speed. The negligence charged was the failure to have someone on hand to shovel away accumulated snow at the end of the incline and the failure to fill the hole with snow so that the toboggans could safely pass onto the snow field after leaving the end of the speedway; and that the dangerous condition developing during his absence was unknown to the plaintiff.

On his first trip down the course after plaintiff's return, the toboggan, on reaching the snow field, struck the hump of snow, went into the air, and, becoming unmanageable, "made a nose dive into the snow," causing the injuries for which suit was brought.

The defendant, denying the allegations of the complaint charging it with the negligent operation of the slide, pleaded affirmatively the signing of the "Notice to Patrons" referred to, and the voluntary assumption of any risk incident to the use of the toboggan course; that the plaintiff was under no necessity or compulsion to use the course; that the defendant maintained it and permitted its use only upon the conditions specified in the notice; and that, but for the signature of the plaintiff to the notice, he would not have been permitted to use it.

The case was tried to the court, sitting with a jury. At the close of plaintiff's case, the defendant moved for a judgment of nonsuit, based upon two grounds: First, the total failure of proof of negligence; and second, the signing of the waiver and voluntary assumption of risk incident to the use of the toboggan. The court granted the motion upon the second ground

assigned—the signing of the waiver by the plaintiff. A judgment was entered dismissing the action, from which the plaintiff appeals.

The appellant contends that the court erred in receiving in evidence the defendant's exhibit No. 1, being the printed waiver or "Notice to Patrons" signed by him, and also erred in giving legal effect to the waiver, which he argues to be invalid as against public policy.

While appellant testified that he did not read the waiver before signing and, in his brief, urges that he signed unwittingly, he is not thereby relieved from the consequences of his act. He was a man of intelligence, able to read and understand the import of the document to which he appended his signature. The law imposed upon him the duty to inform himself as to what he was signing. There is no charge that the respondent practiced any fraud or deception upon him in procuring his signature. The last two lines of the instrument, immediately above the place for signature, specially calling attention to the "Notice to Patrons," was printed in larger type than the rest of the instrument and should have challenged his attention.

"But the courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses

the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts." 6 R. C. L. 624.

Considering the question whether the waiver was void as against public policy, it is a well-recognized rule that corporations engaged in the performance of public duties, as for instance, common carriers, and, generally, those engaged in the operation of public utilities, cannot by contract relieve themselves of liability for negligence in the performance of their duty to the public or the measure of care they owe their patrons under the law. *Hartford Fire Ins. Co. v. Chicago M. & S. P. R. Co.*, 175 U. S. 91, 20 S. Ct. 33; *Railroad Co. v. Lockwood*, 84 U. S. 357. While there are found, in some of the cases, expressions implying an extension of this rule to all contracts in which it is sought to waive liability for negligence, this extension of the rule is not generally accepted.

"Some expressions may be found to the general effect that any contract by any person which assumes to place another party at the mercy of his own faulty conduct is void as against public policy, but such a statement of the rule of the law is too general and sweeping to receive judicial sanction." *Checkley v. Illinois Central R. Co.*, 257 Ill. 491, 100 N. E. 942, Ann. Cas. 1914A, 1202, 44 L. R. A. (N. S.) 1127.

On the question of bargains against liability for negligence, we find in 2 Restatement of the Law of Contracts, p. 1079, the following:

"§ 574. LEGAL BARGAINS FOR EXEMPTION FROM LIABILITY FOR NEGLIGENCE.

"A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575.

*"Comment:*

*"a.* By negligence is meant any conduct not recklessly disregardful of the interests of others which falls below the standard established by law for the protection of others against unreasonable risk of harm. By gross negligence is meant conduct falling greatly below that standard. . . .

*"§ 575. Illegal Bargains for Exemption From Liability for Wilful or Negligent Misconduct.*

" (1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, and a bargain for exemption from liability for the consequences of negligence is illegal if

" (a) the parties are employer and employee and the bargain relates to negligent injury of the employee in the course of the employment, or

" (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation.

" (2) A bargain by a common carrier or other person charged with a duty of public service limiting to a reasonable agreed valuation the amount of damages recoverable for injury to property by a non-wilful breach of duty is lawful."

The toboggan slide conducted by the respondent can in no sense be said to be a public utility or subject to the liability of a common carrier. While members of the public may employ the facilities for their pleasure, they do so with the permission of the respondent and subject to the conditions which it chooses to impose. The service rendered is not essential to public welfare or convenience.

The sport is admittedly dangerous, and only those resort to it who are prepared to accept the risk. The snow upon which the toboggans move is itself one of the most unstable of elements. Its condition and serviceability for this particular sport is subject to

hourly variations of weather and temperature. On the afternoon of the accident, the testimony indicates that the weather was mild and the snow soft and, therefore, more conducive to create the condition alleged by appellant than if cold and the snow dry.

As the respondent, in maintaining the course, was in no sense performing a public service or operating a public utility, it owed no public duty to operate the course. No one could claim a right to use the facility as against the wish of respondent. It was under no legal compulsion to give the service to appellant or to accept his patronage.

The appellant cites numerous cases defining the high degree of care required in the operation of common carriers and public utilities and argues that a like degree of care is required in the operation of facilities offered to the public for their amusement, such as we have here. It may be that a high degree of care is required, but this is beside the question of the right to contract for exemption from liability for ordinary negligence. The degree of care required in any given operation is quite different from the question of power to make a contract waiving liability for negligence.

Assuming that a contract for non-liability for wanton neglect of duty or gross negligence would be void in any case, we find in the record here no evidence of negligence or misconduct in that degree.

The judgment is affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, and STEINERT, JJ., concur.