[No. 29962. *En Banc.* June 4, 1947.]

AUSTIN E. GRIFFITHS, *Appellant,* v. HENRY BRODERICK, INC., *Respondent.*[1]

[1] Reported in 182 P. (2d) 18.

*Lewie Williams, Austin E. Griffiths,* and *Frederick R. Burch,* for appellant.

*J. E. Hullin,* for respondent.

ROBINSON, J.—The defendant in this action filed a demurrer to the complaint therein, which was sustained by the trial court, and, plaintiff having failed and neglected to serve or file any further pleading, the cause was dismissed, on defendant's motion, by a judgment entered on March 1, 1946. From that judgment, this appeal was duly and regularly taken.

Plaintiff, suing as the agent for the community composed of himself and Ella M. Griffiths, his wife, prayed for a judgment against the defendant in the amount of $2,292.49, alleging in his complaint: (1) that, during all the times therein mentioned, the community owned a small apartment house in the city of Seattle; (2) that defendant, Henry Broderick, Inc., was engaged in the real estate business and in caring for and managing buildings of various kinds, including apartment houses; (3) that, on January 9, 1942, plaintiff appointed the defendant corporation as his agent to care for and manage said apartment house; (4) that, prior to and after that appointment, an apartment in said building was occupied by Robert G. Loggins and Lina C. Loggins, his wife; (5) that, in November, 1943, Lina C. Loggins suffered an injury by reason of a defective stairway; (6) that the proximate cause thereof was the negligence of Henry Broderick, Inc., in permitting said stairway to become out of repair; (7) that Loggins and wife brought suit against the plaintiff, and, although plaintiff seasonably demanded that his agent, the defendant in this cause, defend that action, it refused to so defend; (8) that, as a result of such refusal,

plaintiff was compelled to do so; (9) that a judgment was rendered against him therein which he was compelled to pay; and (10) that the discharge of this judgment, plus attorneys' fees and other sums necessarily expended in defense of the action, required a total expenditure on his part of $2,292.49.

Attached to the complaint, and by reference made a part thereof as Exhibit "A," is the management contract between the plaintiff, Griffiths, and the defendant, Henry Broderick, Inc. We quote the material parts thereof, italicizing that portion which induced the trial court to sustain the demurrer:

"Seattle, Washington, 1/9/42

"I appoint HENRY BRODERICK, Inc., my agent, from until further notice, and authorize Henry Broderick, Inc., to take charge of and to manage the property specified on the reverse side of this authorization, situate in the City of Seattle, King County, Washington, and in consideration of such services rendered or to be rendered, I hereby agree to pay a commission of five (5%) per cent per month on all amounts collected from said property, which commission may be deducted monthly by Henry Broderick, Inc., from said amounts.

"I agree that Henry Broderick, Inc., will not be held responsible for any injury or damage to said property, or for the loss of or injury to any furniture, fixtures or other articles therein; and that all persons employed at said property shall be deemed to be the employees of the undersigned; *and I further agree to save and hold Henry Broderick, Inc., harmless of and from any and all loss, damage or injury to any person or persons whomsoever, or property, arising from any cause or for any reason whatsoever in or about said premises.*

"This agreement is subject to cancellation by the undersigned after sixty (60) days from the effective date of this authorization upon payment in full to Henry Broderick, Inc., of all commission due on any leases negotiated in this property by Henry Broderick, Inc., less any moneys paid thereafter for collection of rentals upon said leases. The rate of commission prescribed by the Seattle Real Estate Board shall be used in calculating said commission.

"This agreement is subject to cancellation by Henry

Broderick, Inc., upon three days' written notice to the undersigned.

"Bldg. 603-603 Federal Avenue.

"(Signed)  Austin E. Griffiths."

The appellant contends (1) that the contract does not unequivocally provide that he shall indemnify the defendant for the consequences of its own negligence; and (2) that, if it does so provide, it is clearly void as against public policy.

In support of his first contention, the appellant quotes the following from the treatise on "Indemnity" in 27 Am. Jur. 464, § 15:

"It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms."

There is no doubt but that this rule is well settled. But we think the author of the sentence, above quoted, meant no more than that the rule in such situations is that doubts, if any, should be resolved in favor of the indemnitor. It is scarcely conceivable that he intended to state an exception to the rule which he had stated only two pages before, to wit:

"Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms." 27 Am. Jur. 462, § 13.

The appellant stresses the fact that the word "negligence" does not appear in the indemnity covenant and contends that it is, therefore, manifest that the indemnity clause of the contract is equivocal. We think counsel's contention is well answered in *Payne v. National Transit Co.*, 300 Fed. 411, 413. The indemnity covenant in that case reads as follows:

"Said party of the second part does further agree to indemnify and save harmless the party of the first part from

and against all claims, suits, damages, costs, losses, and expenses, in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe (whether heretofore or hereafter laid), including the breaking of the same or the leaking of oil from the same."

In holding that the above covenant provided that the indemnitor should indemnify the indemnitee against the indemnitee's own negligence, the court said:

"It is true that the courts have said that, in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence. If it is clear, from the language used, that it was intended to cover losses arising from the negligence of the indemnitee, this is sufficient."

The above, of course, is but a one-man opinion, but the decision was affirmed in every particular by the circuit court of appeals (3rd circuit). 6 F. (2d) 729. Quoting five pages of the six-page opinion of the trial court in the footnotes, the circuit court, in affirming the decision, said:

"In so holding we are of opinion that neither in the questions discussed as above, or in the other points raised in the case, all of which have had our attention, did the court below commit error. Its judgment is therefore affirmed."

In *Southern Pac. Co. v. Fellows,* 22 Cal. App. (2d) 87, 90, 71 P. (2d) 75, a case which the supreme court of California declined to review, it is said:

"The indemnity clause in the contract, undertaking, as it does, to indemnify railroad company from and against '*any and all* claims, loss, damage, *injury and liability howsoever the same may be caused, resulting directly or indirectly from work* covered by this agreement,' is so sweeping and all-embracing in its terms that, although it does not contain an express stipulation indemnifying appellant against liability caused by its own negligence, it accomplishes the same purpose. (Italics ours.)"

It would seem that an indemnity covenant could not be more "sweeping and all-embracing in its terms" than the

covenant in this case, which, as we have hitherto seen, reads as follows:

"I further agree to save and hold Henry Broderick, Inc., harmless of and from any and all loss, damage or injury to any person or persons whomsoever, or property, arising from any cause or for any reason whatsoever in or about said premises."

■ In our opinion, there can be no doubt but that a loss, damage, or injury occasioned by negligence is clearly within the following language of the indemnity provision of the management contract; ". . . all loss, damage or injury to any person . . . arising from any cause or for any reason . . . in or about said premises."

■ Appellant's second contention is that the indemnity provision is void as against public policy. Many of the cases which appellant cites are common carrier cases. It is the universal rule that a common carrier cannot by contract relieve itself of liability for negligence in the performance of contracts of carriage. But even a common carrier can bargain for indemnity with respect to its own negligence in contracts in which carriage is not involved. The case of *Michigan Millers Mut. Fire Ins. Co. v. Canadian Northern R. Co.*, 152 F. (2d) 292, is typical of the many so holding, of which a long list is cited in the opinion. That cases involving contracts of carriage in no way support appellant's contention, is clearly shown in at least one of our own decisions, *Broderson v. Rainier Nat. Park Co.* (1936), 187 Wash. 399, 60 P. (2d) 234, from which we quote as follows:

"It is a well-recognized rule that corporations engaged in the performance of public duties, as for instance, common carriers, and, generally, those engaged in the operation of public utilities, cannot by contract relieve themselves of liability for negligence in the performance of their duty to the public or the measure of care they owe their patrons under the law. *Hartford Fire Ins. Co. v. Chicago M. & S. P. R. Co.*, 175 U. S. 91, 20 S. Ct. 33; *Railroad Co. v. Lockwood*, 84 U. S. 357. While there are found, in some of the cases, expressions implying an extension of this rule to all contracts in which it is sought to waive liability for negligence, this extension of the rule is not generally accepted.

" 'Some expressions may be found to the general effect that any contract by any person which assumes to place another party at the mercy of his own faulty conduct is void as against public policy, but such a statement of the rule of the law is too general and sweeping to receive judicial sanction.' *Checkley v. Illinois Central R. Co.*, 257 Ill. 491, 100 N. E. 942, Ann. Cas. 1914A, 1202, 44 L. R. A. (N.S.) 1127."

Appellant has cited certain cases in which it is held that a contract by which one agrees to save another harmless from the consequences of his own negligence is void as against public policy. Typical of these are *Johnson v. Richmond & D. R. Co.*, 86 Va. 975, 11 S. E. 829, and *Otis Elevator Co. v. Maryland Cas. Co.*, 95 Colo. 99, 33 P. (2d) 974. The latest case cited of this type is *Nashua Gummed & Coated Paper Co. v. Noyes Buick Co.*, 93 N. H. 348, 41 A. (2d) 920, decided in 1945. In that case, it is said:

"Defendant's counsel concede that in this jurisdiction the ordinary contract exempting a person from liability for the consequences of his negligence is held to be void as against public policy."

However, it appears that that rule was vigorously attacked by counsel, who cited 6 Williston on Contracts (Rev. ed.) 4967, § 1751B, and 37 Columbia L. Rev. 248. The court was quite evidently in some doubt as to its former decisions, for it said:

"We deem it unnecessary to discuss these contentions, however, or to determine whether the rule governing exculpatory contracts has been too broadly phrased in our decisions, for we believe that the covenant under consideration was not intended to apply to such an extraordinary situation as that here disclosed."

The basis of the broad rule prevailing in some jurisdictions, that one cannot validly contract for indemnity for the consequences of his own negligence, is the theory that the inevitable tendency of such a contract is to promote negligence, or, concretely to apply the rule to the instant case, it is contended that the contract involved here would inevitably tend to make Henry Broderick, Inc., less careful than it would have been had the contract not contained the

indemnity provision. Hence, it is asserted that the indemnity provision is invalid.

It must become apparent, upon reflection, that the theory upon which the rule is based is not recognized in many analogous situations. For example, thousands upon thousands of trucks and automobiles are continually operating upon our streets and highways whose owners have indemnity contracts as to injuries which they may negligently inflict upon the person or property of the members of the public. Many automobile owners hold such contracts protecting them from the results of their own negligence, up to twenty-five thousand dollars with respect to the injury of one person, and fifty thousand dollars as to persons injured in any one accident. They have contracted for full indemnity against injuries caused by their own negligence, and the validity of such contracts is unquestioned.

In the case of *Northern Pac. R. Co. v. Thornton Bros. Co.,* 206 Minn. 193, 288 N. W. 226, wherein a contractor agreed to indemnify a railroad against any liability it might incur from damages to third persons as a consequence of its own negligence, the supreme court of Minnesota, in holding the contract valid, said:

"Quite fanciful is the suggestion that to hold as we do is 'to put a premium on negligence rather than to discourage it.' See note, 23 Virginia L. Rev. 85, 86. . . .

"Neither law nor public policy prevents the ordinary contractor from buying from a third party indemnity from the pecuniary result of his own negligence. *That is legitimate as insurance. How does the same process, with identical result, become illicit simply because they are those of the original and basic contract rather than a collateral one for conventional insurance?* See 19 Minn. L. Rev. 471; 22 *Id.* 107." (Italics ours.)

We have concluded, as a result of our own researches, that the great weight of authority is against appellant's contention. The infinitely more comprehensive research of The American Law Institute resulted in the same conclusion. 2 Restatement of the Law of Contracts, pp. 1077-1082. Note particularly §§ 572, 574, and 575. Furthermore, our decision in *Broderson v. Rainier Nat. Park Co., supra,* is

decisive as to the law of this jurisdiction. The appellant attempts to dispose of the *Broderson* case in his reply brief in the following manner. Referring to the contract involved in that case, he says:

"A reading of this contract, contained on pages 400 and 401 of 187 Wash., discloses no mention nor inference that the rights of any *third party* or *parties* were involved."

And of the contract in the instant case, he says:

"To the contrary, by the terms of the agreement, it was clearly understood that the rights of others were under consideration as shown from the following quotation from the agreement:

" 'And I further agree to save and hold Henry Broderick, Inc., harmless of and from any and all loss, damage, or injury to *any person* or *persons whomsoever*, or property, arising from any cause or for any reason whatsoever in or about said premises.' "

There is no merit in the attempted distinction. In fact, there is no such distinction. No third person's rights were affected by either contract. The contract of the parties in the instant case does not purport to, and could not possibly, affect or in any way limit the right of recovery of any person injured by the negligent condition of the Griffiths premises. The Loggins chose to sue the owner of the building, that is, the plaintiff in this action. We assume that he did not plead the management contract as a defense, and we may affirm, with complete confidence, that, if he did, it was stricken from the pleadings. Neither could Henry Broderick, Inc., have pleaded the management contract as a defense had the Loggins brought suit against it. The management contract directly affects the rights of the parties to it only, that is to say, the parties to this case, and no other persons.

If, by asserting that the management contract in this case affected third parties, the appellant merely means that it indirectly affected the renting public, in that it promoted negligence as to keeping the premises in repair, then it must also be conceded that the contract, held legal in the *Broderson* case, indirectly affected the tobogganing and skiing

public, in that it promoted negligence in furnishing safe equipment. The full text of the contract held legal in the *Broderson* case may be found in 187 Wash. 399, 60 P. (2d) 234. The defendant in that case maintained a supply of toboggans, skis, snowshoes, and other winter sports equipment. These articles customers could rent, but only by agreeing in writing to the following terms:

"This equipment is not in any way guaranteed,. either as to correct construction or safe use. Parties renting and using this equipment will do so entirely upon their own judgment and at their own risk.

"A toboggan slide and ski slides have been built, but the Company does not in any way vouch for the correct construction or safe operation of any of these devices or equipment. Parties using any or all of the equipment or facilities indicated will do so entirely at their own risk."

Obviously, this is a contract by which one of the parties agrees to save the other harmless from the consequences of furnishing him with defective equipment to be used in dangerous sports. We say "dangerous sports" since tobogganing was specifically held, in the *Broderson* opinion, to be a dangerous sport, and it is a matter of common knowledge, at least among those who read the Monday morning's papers during the winter season, that skiing is a dangerous sport. In fact, it is stated, in the very first line of the contract by which the defendant in that case sought to relieve itself from the consequences of its own negligence in furnishing defective equipment, that: "All forms of winter sports are attended with more or less danger, . . ." Yet, that contract was held valid, for reasons so fully shown in the opinion that they need not be repeated here. It is clear that the broad rule for which plaintiff contends does not obtain in this state.

The judgment of the trial court is affirmed.

MALLERY, C. J., STEINERT, SIMPSON, JEFFERS, SCHWELLENBACH, ABEL, and HILL, JJ., concur.