**Randall W. GARRETSON, Plaintiff-Appellant,**

v.

**The UNITED STATES of America et al., Defendants-Appellees.**

**No. 26525.**

United States Court of Appeals, Ninth Circuit.

March 13, 1972.

James S. Turner (argued) of Roberts, Shefelman, Lawrence, Gay & Moch, Seattle, Wash., Johnston & Hetherington, Denver, Colo., for plaintiff-appellant.

Michael Mines (argued), of Hullin, Roberts, Mines, Fite & Riveland, W. R. McKelvy (argued), of Skeel, McKelvy, Henke, Evenson & Betts, Seattle, Wash., Walter H. Fleischer, Atty. (argued), L. Patrick Gray, III, Asst. Atty. Gen., Dean C. Smith, U. S. Atty., Morton Hollander, Alexander P. Humphrey, Attys., Dept. of Justice, Washington, D. C., Robert E. Conner, Wenatchee, Wash., Lycette, Diamond & Sylvester, Seattle, Wash., Carlson & Carlson, Wenatchee, Wash., Hershiser, Mitchell & Warren, Portland, Or., Reed, McClure & Moceri, Seattle, Wash., for defendants-appellees.

Before DUNIWAY and CHOY, Circuit Judges, and SOLOMON, District Judge.*

SOLOMON, District Judge:

Garretson, the appellant, in order to compete in an amateur ski-jumping tournament, voluntarily signed an "Entry Blank" releasing the sponsors of the tournament from all liability for injuries which he might sustain in the competition. Garretson was injured in the competition. The issue in this appeal is whether Garretson, under Washington law, is barred by the release from maintaining an action based on negligence against the sponsors.

On February 4, 1968, the Leavenworth Winter Sports Club (Club) sponsored and held a ski-jumping tournament on a 100-meter ski-jumping hill near Leavenworth, Washington. The tournament was held on land owned by the United States, pursuant to a "Special Use Permit" issued by the Forest Service. The United States Ski Association and the Pacific Northwest Ski Association sanctioned the tournament. Officials from these two associations helped Club officials supervise and conduct the tournament.

Garretson, the appellant, was an experienced ski jumper. He had been a mem-

---

* Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

ber of the United States Nordic Team and the United States National Team. He had participated in previous tournaments at Leavenworth and had competed in ski-jumping tournaments both in America and Europe.

A Club official invited Garretson to compete in this tournament. The Club reimbursed him for travel expenses and tournament fees, and provided him lodging, meals and entertainment while at the tournament.

On the afternoon of February 4, 1968, Garretson gathered with other competitors at the top of the ski-jumping hill. Before the competition began, all jumpers were asked to sign an "Entry Blank".

Garretson had signed similar entry blanks with releases when he competed in other tournaments. When he read and signed this Entry Blank, he saw that it did not include his "Jumping Class" category. He therefore added "A" for his correct classification, and he checked it. The Entry Blank, when completed, read:

ENTRY BLANK

Please fill out this entry blank properly and return immediately.

NAME _Rony Garrets_ ADDRESS _2293 So. Humboldt_

CITY _Denver_ STATE _Colorado_

CLUB & CARD NO. _Univ. of Denver_

ACCIDENT INSURANCE CO. _U.S. Team_

JUMPING CLASS: Check one.

( ) Junior Novice      ( ) B Class    A ✓

( ) Junior Expert      ( ) Veteran

( ) Cross country (if any)

In consideration of the acceptance of my application, I hereby release the Leavenworth Winter Sports Club, U. S. Ski Association, Ski Patrol, U. S. Forest Service, their members or agents and any person officially connected with this competition from all liability for any injuries or damages whatsoever arising from participation in or presence at this competition.

SIGNED _Rick J. Garretson_

APPROVED _____
                (parent or guardian)

Mail to:

Ralph E. Steele
Box 158
Leavenworth, Wash.

[A5601]

Shortly after Garretson signed it, he jumped. While airborne, the wind turned him out of position, and he could not land normally. He fell in front of the usual landing area and suffered serious back injuries. He filed an action against the United States as owner of the land, the three ski organizations which sponsored the tournament, and a number of the officials from these organizations who supervised and conducted the tournament. All of these organizations are non-profit corporations which sponsor amateur athletic ski tournaments, and all of the individual defendants served without compensation.

Garretson asserts that all of the defendants were guilty of negligence because the officials of the tournament permitted him to jump when the prevailing weather conditions made it unsafe for jumping.

Defendants denied the charges and affirmatively pleaded the release in the Entry Blank. The trial court granted defendants' motions for summary judgment based upon the release because of *"Broderson* and its progeny".

In Broderson v. Rainier Nat. Park Co., 187 Wash. 399, 60 P.2d 234 (1936), plaintiff rented a toboggan for use on a toboggan course in the Park. He was given a lengthy printed form, entitled "Notice to Patrons", which contained a receipt for the deposit, a description of the equipment rented, and a statement that persons using the equipment do so at their own risk. Plaintiff signed the form immediately below a statement which read, "I HAVE RECEIVED THE ABOVE SPECIFIED EQUIPMENT AND SAME WILL BE USED AT MY RISK AND UNDER CONDITIONS NAMED IN 'NOTICE TO PATRONS' PRINTED ABOVE."

Plaintiff was injured on the toboggan. He filed an action for damages, charging that the defendant was guilty of negligence in failing to remove accumulated snow and in failing to fill a hole with snow so that toboggans could safely pass onto the snow field after leaving the end of the speedway.

The trial court dismissed the action because of the waiver provisions in the Notice which plaintiff had signed. In his appeal, plaintiff claimed that he did not read the waiver before signing it or that he signed it unwittingly and therefore should be relieved from the consequences of his act. The Court rejected this contention on the ground that plaintiff was under a duty to inform himself on what he was signing. Since he was a man of intelligence, able to read and understand the document, and since no fraud or deception was practiced upon him, the Court found that plaintiff was bound by the provisions of the waiver, regardless of whether he read it.

Plaintiff next contended that the waiver was void as against public policy. In rejecting this contention, the Court approved the following statement from Vol. 2 Restatement of Contracts (1932):

" § 574. Legal Bargains for Exemption from Liability for Negligence.

"A bargain for exemption from liability or the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575."

The exceptions in Section 575 relate to a wilful or grossly negligent breach of duty or a bargain for exemption of liability when the parties stand in the relation of employer and employee or when the party seeking the exemption is engaged in public service.

The Supreme Court of Washington observed:

"The toboggan slide conducted by the respondent can in no sense be said to be a public utility or subject to the liability of a common carrier. . . . The service rendered is not essential to public welfare or convenience. The sport is admittedly dangerous, and only those resort to it who are prepared to accept the risk. The snow upon which the toboggans move is itself one of the most unstable of elements. . . . " 60 P.2d at 237.

Among the progeny of *Broderson* cited to the trial court here were two Washington Court of Appeals decisions: Baker v. City of Seattle, 2 Wash.App. 1003, 471 P.2d 693, and McCutcheon v. United Homes Corporation, 2 Wash.App. 618, 469 P.2d 997.

All parties agree that the validity and effect of the release in the Entry Blank must be determined by Washington law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

After the trial court granted summary judgment here, both *Baker* and *Mc-Cutcheon* were reversed by the Supreme Court of Washington.

Garretson contends that *Broderson* is no longer the law in Washington. He asserts that even though the releases do not seek to exempt a public utility or an employer of one guilty of a wilful or grossly negligent act, the releases are void as against public policy.

In Baker v. City of Seattle, 79 Wash.2d 198, 484 P.2d 405 (1971), plaintiff, when he rented a golf cart, signed a "Golf Cart Rental Agreement" which contained a disclaimer of liability. "The disclaimer, about in the middle of the agreement, would have been observed only by reading the entire agreement." 484 P.2d at 406. The Supreme Court of Washington, in reversing the summary judgment of dismissal, stated:

> "We now hold Broderson v. Rainier National Park Co., *supra*, must be and is hereby expressly overruled, in so far as it holds a plaintiff who has unwittingly signed, 'is not thereby relieved from the consequences of his act.'" 484 P.2d at 406.

The Court also reviewed the provisions of the Uniform Commercial Code, which held that "to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous*." RCW 62A.2–316. And the Court concluded:

> "In the instant case, the disclaimer was contained in the middle of the agreement and was not conspicuous. To allow the respondent to completely exclude himself from liability by such an inconspicuous disclaimer, would truly be unconscionable." 484 P.2d at 407.

Here, Garretson did not unwittingly sign. He was a college student and an experienced skier who had signed forms containing similar releases before. The release here was conspicuous and Garretson read it.

The *Baker* limitation of *Broderson* does not help Garretson.

In McCutcheon v. United Homes Corporation, 79 Wash.2d 443, 486 P.2d 1093 (1971), the plaintiffs were month-to-month tenants in a multi-family dwelling complex owned by the defendant. One plaintiff injured herself when she fell on an unlighted flight of stairs leading from her apartment, and the other plaintiff injured himself on a loose step on the outer stairs of the apartment building.

The rental agreement included an exculpatory clause relieving the owner and its agents from all liability resulting from their own negligence in maintaining the common passageways, stairs and other areas under their own domination and control but which were available for the tenants' use.

The Court held that rental agreements can no longer be regarded as a "purely private affair" or "not a matter of public interest". In recent years the rental of residential units in multi-family dwelling complexes has become a major commercial enterprise which directly affects the lives of hundreds of thousands of people who depend upon these accommodations for shelter.

As in *Broderson*, the Court adopted Section 574 Restatement of Contracts (1932) as the key to determine the validity of exculpatory clauses. It concluded that to permit a landlord to attempt to exculpate himself from liability as a result of his own negligence over common areas which he had an affirmative duty to maintain in a reasonably safe condition would fall "greatly below the standard established by law for the protection

of others against unreasonable risk of harm."

*McCutcheon* did not further limit or overrule *Broderson*. It merely held that such a provision in a rental agreement fell greatly below that standard and would therefore offend the public policy of Washington.

We believe that the release here, in which a contestant in an amateur ski-jumping tournament released the sponsors from liability for injuries sustained in the competition, is reasonable and does not fall "greatly below the standard established by law for the protection of others against unreasonable risk of harm." Under Washington law, it is valid.

There is no merit in the contention that Garretson was an employee of any of the defendants.

We have considered Garretson's other contentions, and we find them all to be without any merit.

Affirmed.