[No. 2000-1. Division One. April 22, 1974.]

ABEL HEWITT III, *as Administrator, Appellant,* v. JACK MILLER *et al., Respondents.*

*Schroeter, Jackson, Goldmark & Bender* and *Paul W. Whelan,* for appellant.

*Reed, McClure, Moceri & Thonn, P.S., William R. Hickman, Hugh A. McClure, Williams, Lanza, Kastner & Gibbs,* and *Paul C. Gibbs,* for respondents.

SWANSON, C.J.—Don Franklin Hewitt enrolled in an advanced scuba diving class conducted by The Marker Buoy, Inc., a Washington corporation involved in selling and renting and providing services incidental to sport scuba diving, including instruction. Hewitt paid The Marker Buoy, Inc., $75 as full payment for the instruction and subsequently

signed a document entitled "Safety Affirmation and Release" which purported to release The Marker Buoy, Inc., and its instructors from all claims arising out of death or injury to participants in the class. All of the students were asked to sign this document prior to engaging in the first dive. During the course of the second dive, on the afternoon of December 19, 1971, Hewitt disappeared beneath the surface of Puget Sound. No trace of him or his diving equipment was ever found.

The administrator of Hewitt's estate, Abel Hewitt III, brought a wrongful death action against The Marker Buoy, Inc., its manager Jack Miller, and an instructor Jim McMahon. The lawsuit was based on three theories: (1) Negligence; (2) breach of duty of public service; and (3) willful negligence, recklessness and/or conduct falling greatly below the standards established by law for protection against unreasonable risks of harm. The defendants' answer raised affirmative defenses of contributory negligence, assumption of risk and the exculpatory release signed by Hewitt. Defendants moved for summary judgment of dismissal which was granted by the trial court on November 1, 1972. Plaintiff appeals, assigning error to the trial court's order granting summary judgment.

In its summary judgment order, the trial court concluded, in part:

3. There is no genuine issue of fact that:

(a) The "Safety Affirmation and Release" was executed by Don F. Hewitt.

(b) The form and language of the release was conspicuous such as to bring home to the signator the disclaimer of liability therein, and therefore *Baker v. Seattle*, 79 Wn.2d 198 (1972) is inapplicable.

(c) The acts relied upon by the plaintiff to establish negligence was [sic] the type of activity covered by the language of the release and for which the release was designed to exculpate the defendants because they are inherent in the nature of the activity involved.

(d) The acts of the defendants did not, as a matter of law, constitute willful or wanton misconduct such as to create an issue for the jury.

4. The signing of the release by the decedent integrated the transaction of the parties. There was valid consideration for the release.

5. The release was the proper subject of an exculpatory clause, is not against public policy, and although strictly construed, is a valid defense to the plaintiff's first cause of action.

The court also recognized that the release in question is not a valid defense to factually supported causes of action based upon breach of duty of public service, or willful and wanton misconduct, but concluded that the activity involved was not a public service which would prevent the release from being operative, it being only a private contract between the parties, and the undisputed facts are insufficient to make out a case of willful or wanton negligence. We agree. Extended discussion is not required to conclude that instruction in scuba diving does not involve a public duty and the record is devoid of any evidence of willful negligence. The trial court correctly granted summary judgment as to appellant's action insofar as it was based upon theories of breach of public duty or willful negligence.

 Thus, in considering appellant's assignment of error, we need only discuss the sufficiency of appellant's cause of action insofar as it is based upon a claim of negligence on the part of the respondents. Our review is confined to determining whether there is a genuine issue as to any material fact and, if not, whether under the established facts, appellant states a claim upon which relief can be granted, or whether the trial court correctly determined that the moving parties—the respondents—are entitled to judgment as a matter of law. All reasonable inferences must be resolved in favor of the appellant, the nonmoving party. *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963); *Citizens for Underground Equality v. Seattle*, 6 Wn. App. 338, 492 P.2d 1071 (1972).

Appellant argues that the most favorable view of the

facts indicates that the respondents negligently selected a dangerous site for the dive and negligently paired Hewitt with an improperly equipped "buddy," one Richard Simpson who, because of his improper equipment, was unable to rescue the decedent. Further, appellant contends that it can be established that the respondents knew of the decedent's peril but negligently failed to rescue him, and negligently prevented others from making a rescue.

Assuming without deciding that appellant's assertions of negligence create issues of fact, the summary judgment was granted on the ground that the "Safety Affirmation and Release" signed by Hewitt constitutes an absolute defense and therefore any factual issue is immaterial and respondents are entitled to judgment as a matter of law. Appellant's basic contention, however, is that the release is contrary to public policy and, in support of that proposition, appellant directs our attention to the trilogy of *McCutcheon v. United Homes Corp.*, 79 Wn.2d 443, 486 P.2d 1093 (1971); *Baker v. Seattle*, 79 Wn.2d 198, 484 P.2d 405 (1971); *Broderson v. Rainier Nat'l Park Co.*, 187 Wash. 399, 60 P.2d 234 (1936).

In *Broderson*, the plaintiff rented a toboggan for use on a toboggan course in Rainier National Park. He was given a printed form entitled "Notice to Patrons" which contained a receipt for the rental deposit, a description of the equipment rented, and a statement that persons using the equipment or slide facilities do so at their own risk. Plaintiff signed the form immediately below a statement in capital letters which read:

> I have received the above specified equipment and same will be used at my risk and under conditions named in "Notice to Patrons" printed above.

*Broderson v. Rainier Nat'l Park Co.*, *supra* at 401. Plaintiff was injured on the toboggan and filed an action for damages, charging negligence. The trial court dismissed the action at the close of plaintiff's case because of the waiver provisions in the "Notice to Patrons." In his appeal, plain-

tiff claimed that he had signed the waiver unwittingly and therefore should be relieved from the consequences of his act. In affirming the judgment, the court rejected this contention as well as the argument that the waiver was void as against public policy. Moreover, the court found no evidence of willful or gross negligence and concluded that the toboggan slide did not involve a public service.

The *Broderson* decision was recently reexamined in *Baker v. Seattle, supra,* which involved a golf cart rental agreement containing a disclaimer of liability. The disclaimer was in the middle of the agreement and could be observed only by reading the entire agreement. Our state Supreme Court in reversing the summary judgment of dismissal in *Baker,* stated, at page 200:

> We now hold *Broderson v. Rainier Nat'l Park Co., supra,* must be and is hereby expressly overruled, in so far as it holds a plaintiff who has unwittingly signed, "is not thereby relieved from the consequences of his act."

In *McCutcheon v. United Homes Corp., supra,* decided shortly after *Baker,* the court struck down a disclaimer of liability agreement which purported to relieve a lessor of a multi-family dwelling complex, and his agents, from all liability resulting from their own negligence in maintaining the common passageways, stairs, and other areas of the premises under their dominion and control, but which were available for the tenants' use. The plaintiffs were month-to-month tenants of the building who were injured as a result of the condition of negligently maintained stairways.

The *McCutcheon* court concluded that an exculpatory clause in a residential rental agreement, which relieves a lessor of liability for personal injuries caused by his own negligence, can no longer be regarded as purely a private affair which is not a matter of public interest, and therefore the court declined to enforce the exculpatory clause in question. The court adopted Restatement of Contracts § 574 (1932) as the key to determining the validity of exculpa-

tory clauses,[1] and held that to permit a landlord to attempt to exculpate himself from liability for personal injuries resulting from his own negligence in the maintenance of "common areas" would contravene a landlord's affirmative common-law duty to maintain such areas in a reasonably safe condition and therefore would fall "greatly below the standard established by law for the protection of others against unreasonable risk of harm . . ."

Significantly, *McCutcheon* did not further limit or overrule *Broderson* beyond what was said in *Baker,* but merely held that the exculpatory provision in question fell greatly below the standard applicable to the landlord-tenant relationship and therefore was contrary to the public policy of our state.[2] In this connection, an excellent statement regarding the enforceability of exculpatory contracts appears in 57 Am. Jur. 2d *Negligence* § 23 (1971):

> Absent some statute to the contrary, the generally accepted rule is that contracts against liability for negligence are valid except in those cases where a public interest is involved.

(Footnote omitted.) *See also* 15 A.L.R.3d 774 (1967); 8 A.L.R.3d 1338 (1966). The most recent review of the law in this area, which is essentially incorporated into the foregoing discussion, is found in *Garretson v. United States,* 456 F.2d 1017 (9th Cir. 1972). In *Garretson,* the court reviewed the *Broderson, Baker* and *McCutcheon* decisions and held that an amateur ski jumper who knowingly signed an "Entry Blank" containing a release was barred from pursuing a negligence action.

 Turning to a consideration of the validity of the

---

[1]Restatement of Contracts § 574 (1932) provides in relevant part:

"A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal . . ."

[2]Thus, where parties on equal footing negotiated at arm's length and no element of injustice was involved, an exculpatory clause in a commercial setting has been upheld. *Gabl v. Alaska Loan & Inv. Co.,* 6 Wn. App. 880, 496 P.2d 548 (1972).

release in the case at bar, it is apparent that the public policy considerations such as those which attach to the landlord-tenant relationship as enunciated in *McCutcheon* are not involved here. In this regard, we have already held that scuba diving instruction does not involve a public duty such as that of a common carrier or a public utility. In the context of this case, we are unable to say that the exculpatory release provisions in question are per se against public policy. Further, it is clear that the unwitting signing which invalidated the release in *Baker* is not present here. The uncontroverted facts set forth in the affidavits and depositions contained in the record indicate that Hewitt did execute the "Safety Affirmation and Release," and an examination of the document indicates that its form in language is so conspicuous that reasonable men could not reach different conclusions on the question of whether Hewitt unwittingly signed the document. The document entitled "Safety Affirmation and Release" contains the following language:

SAFETY AFFIRMATION AND RELEASE (Read Carefully, then sign) I DON F. HEWITT hereby affirm that I have previously completed a certified beginning course of instruction in SCUBA diving prior to enrolling in this course. By enrolling in this course I certify that I am cognizant of all of the inherent dangers of skindiving and SCUBA diving, and of the basic safety rules for underwater activities.

I understand that it is not the purpose of this course to teach safety rules, nor is it the function of the instructors to serve as the guardians of my safety. I also understand that I am to furnish my own equipment and I am responsible for its safety and good operating condition regardless of where I obtain it.

I understand and agree that neither this class nor its owners, operators, agents, or instructors, including but not limited to James H. McMahan: Jack Miller d/b/a The Marker Buoy and other unnamed assistance [*sic*], may be held liable in any way for any occurrence in connection with the Advanced SCUBA diving class which may result in injury, death, or other damages to me or my family, heirs, or assigns, and in consideration of being allowed to enroll in this course, I hereby personally as-

sume all risks in connection with said course, and I further release the aforementioned instructors, program, agents and operators, including but not limited to the persons mentioned, for any harm, injury or damage which may befall me while I am enrolled as a student of the school, including all risks connected therewith, whether forseen [*sic*] or unforseen [*sic*]: and further to save and hold harmless said program and persons from any claim by me, or my family, estate, heirs, or assigns, arising out of my enrollment and participation in this course.

I further state that I am of lawful age and legally competent to sign this affirmation and release: that I understand the terms herein are contractual and not a mere recital: and that I have signed this document as my own free act.

I HAVE FULLY INFORMED MYSELF OF THE CONTENTS OF THIS AFFIRMATION AND RELEASE BY READING IT BEFORE I SIGNED IT. I have had a medical examination to assure myself, and assume my own responsibility of physical fitness and capability to perform under the normal conditions of an advanced diving program, and am physically fit as attested to by the aforementioned medical examination.

Even a cursory examination of the foregoing language contained in the release here in question reveals that it clearly is applicable to the accident which apparently resulted in Don Franklin Hewitt's death. The failure of a diver to surface is obviously an inherent danger of the sport of scuba diving. By signing the release, Hewitt acknowledged the possibility of his own death from the "inherent dangers" of scuba diving and agreed that the respondents are not to be deemed the guardians of his safety. Given such language, contrary to appellant's position, explicit reference to "negligence" was not necessary to protect respondents under the release. Based upon the undisputed facts in the record and upon our review of the law of this state, we hold that the release in question is valid[3] and

___

[3]Appellant argues in his brief that the release, having been signed by Hewitt after he paid the fee for the diving class, is invalid because it is unsupported by consideration. This argument is without merit

therefore the trial court correctly determined that it operates as a complete bar to appellant's lawsuit based upon allegations of negligence.

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied June 19, 1974.

Review denied by Supreme Court October 7, 1974.

because the release, insofar as it may have modified the original agreement, was an integrated part of the whole transaction between Hewitt and the respondents, and therefore is supported by the original consideration. *See Conran v. White & Bollard, Inc.,* 24 Wn.2d 619, 167 P.2d 133 (1946), and cases cited therein. *See also Meyer v. Strom,* 37 Wn.2d 818, 226 P.2d 218 (1951).