622 So.2d 1134 (1993)
John DEBOER, as personal representative of the Estate of Bonnie Lynn Drumheller, Deceased, Appellant,
v.
FLORIDA OFFROADERS DRIVER'S ASSOCIATION, INC., ETC., Appellee.
No. 92-2338.
District Court of Appeal of Florida, Fifth District.
August 13, 1993.
Roy B. Dalton, Jr., of Martinez & Dalton, P.A., and Marcia K. Lippincott of Marcia K. Lippincott, P.A., Orlando, for appellant.
R. Barry Morgan of Lawrence, Landis & Morgan, P.A., Orlando, for appellee.
PETERSON, Judge.
Appellant is personal representative of the estate of Bonnie Lynn Drumheller, a spectator at a racing event conducted by appellee, Florida Offroaders Driver's Association, Inc. (FORDA). While Drumheller was attempting to walk across the racetrack she was hit by a racing car and died from the resulting injuries. FORDA successfully moved for summary judgment on the ground that Drumheller signed a release when she entered the racetrack facility.
On April 24, 1990, FORDA conducted a race for offroad vehicles at Crowder's Pits near Tallahassee. The event was open to the general public provided that each admittee paid an admission fee of $10.00 and signed the release and waiver appended to this opinion. Drumheller attended the race *1135 in the company of two companions and gained entrance after paying the admission fee and signing the release. According to a representative of FORDA, there is one entrance to the event and, when the patrons arrive at the gate in their vehicles, the ticket seller hands them a clipboard to which the release is attached. Everyone in the vehicle then signs the release and returns the clipboard and release to the ticket seller along with the money. It usually takes only a few minutes to accomplish this transaction and the rules of FORDA prevent admission in the absence of a signed waiver.
A sketch of Crowder's Pits designates a spectator area on one side of the track. Portable toilets are located in the pit area across the track and one must cross the racetrack in order to visit the pit area. Once the race starts, the entrance gate is locked to prevent vehicles from leaving the racing grounds because in order to exit, vehicles would have to cross the racetrack. The record does not indicate that any barriers separate the spectators from the track or that officials guard the track to prevent access to an active racetrack. The record does not reflect the reason why Drumheller attempted to cross the track or why she failed to see and avoid the vehicle that struck her.
Appellant contends that the trial court erred in entering summary judgment because material issues of fact existed as to:
(1) The scope of the release.
(2) The relationship of the parties.
(3) Whether the release is unconscionable and therefore unenforceable.

SCOPE OF RELEASE
Appellant concedes that it is the law of Florida that although exculpatory clauses are disfavored, they are enforceable. Agreements which purport to limit, in advance, one's liability for negligence will not be enforced unless the intention to limit is clearly and unequivocally expressed. O'Connell v. Walt Disney World Co., 413 So.2d 444 (Fla. 5th DCA 1982); Theis v. J & J Racing Promotions, 571 So.2d 92 (Fla. 2d DCA 1990), rev. denied, 581 So.2d 168 (Fla. 1991); Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla. 1979); University Plaza Shopping Center v. Stewart, 272 So.2d 507 (Fla. 1973); L. Luria & Son, Inc. v. Alarmtec Intern. Corp., 384 So.2d 947 (Fla. 4th DCA 1980); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972).
A release and waiver quite similar to that signed by Drumheller has been used in at least one prior case. In Theis, a race car driver was killed when, during a race, his car overtook and ran into another car which was running unauthorized test laps on the track. The issue in Theis was "whether the release and waiver signed by the driver, Theis, was clear, unambiguous, unequivocal, broad enough and specific enough to absolve appellees for liability for their own negligence, even if their actions constituted gross negligence." Id. at 93. The court held that the release and waiver met all those requirements and construed it to encompass all forms of negligence, simple or gross.
Appellant points out that, in Theis, the releasor was a participant in the race. He argues that while a participant in a race, such as the race driver in Theis, may effectively release a racing sponsor with this particular form, it does not follow that the same form or a similar form is so clear, specific and unambiguous as to allow a spectator to effectively release FORDA. However, Theis, did not turn on the status of the driver; it turned on whether the form was broad enough to release the sponsor of negligence, ordinary or gross, during the racing event.
Appellant states in his brief:
A first-timer could easily have interpreted the document she signed as a warning to stay out of restricted areas and as a limitation of liability for the Defendant should she choose to ignore that warning. However, it is unlikely that the first-timer would understand that she would be a prisoner once she entered the gates and the race started, that to take care of her restroom needs that she *1136 would be forced to enter a restricted area and risk her life, and that the document she signed was intended to absolve the Defendant of all liability for her death.
We agree with the first sentence of the statement, and it is undisputed that the track in the instant case was a restricted area to which the release applied. The facts stated in the second sentence are not at all supported by the evidence, nor is there any assertion that they could be proved if an opportunity were presented. The assertion that Drumheller was traversing the racetrack to take care of rest room needs is pure speculation unsupported by the evidence. Further, for a release to be effective, it is not necessary to list each possible class of releasor or each possible manner in which a releasor could be injured during an inherently dangerous event. The possibilities are endless. The instant release is very similar to the release in Theis, and, if the public policy of this state is to allow limitation of liability for negligence in advance, we agree with the Second District Court that the language of the release was sufficient to accomplish the limitation.
In the instant case, a reasonable person would have heeded the warning in the release to stay out of the restricted area or risk injury without liability on the part of the promoter. The warning here rings louder than in Theis. The driver in Theis could not reasonably anticipate that, while participating in an authorized race, he would encounter another vehicle on the race track conducting unauthorized test laps. Here, Drumheller walked across the racing surface notwithstanding its designation as a restricted area. Driving competition vehicles on a racing surface during a race is inherently dangerous; attempting to walk on the surface during a race is flirting with a high risk of being seriously injured. Absent impaired mental faculties, one need not be an experienced spectator or competitor to recognize the potential for injury, and the desire for a release in advance from a racing promoter for injuries received by a spectator who ignores the obvious dangers.

RELATIONSHIP OF PARTIES
Appellant asserts that the relationship of the parties and their relative bargaining power in negotiating the terms of a release are material facts which must be determined by a jury, not a judge, upon a motion for summary judgment. Appellant cites Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974), in support of the assertion, but appellant does not explain how the relationship of FORDA and Drumheller and their relative bargaining powers are similar to the facts in Ivey, nor how Ivey should influence the result in the instant case. Further, appellant overlooks Banfield v. Louis, 589 So.2d 441 (Fla. 4th DCA 1991), in which the court restricted the application of Ivey to circumstances in which the release is a public utility or a company serving some public function. The court also held that Ivey did not apply where the circumstances involved the releasor's voluntary participation in a sporting event. In Ivey, the court cited Annotation: Limiting Liability For Own Negligence, 175 A.L.R. 8 (1948), which noted that in recreational settings there is no inequality of bargaining power. See 175 A.L.R. 155, 157, citing Broderson v. Rainier Nat. Park Co., 187 Wash. 399, 60 P.2d 234 (1936) (toboggan slide); Kushner v. McGinnis, 289 Mass. 326, 194 N.E. 106 (1935) (amusement device); Brennan v. Ocean View Amusement Co., 289 Mass. 587, 194 N.E. 911 (1935) (roller coaster).

UNCONSCIONABILITY
Appellant also contends that the release is unconscionable and therefore unenforceable. In support of this contention appellant argues that the release is unconscionable in that it should have been printed in larger, bolder type, in that there was insufficient time and information to make a reasoned decision whether to sign the release, and in that the release is one-sided. In support of the argument that there was insufficient notice, he cites Celli v. Sports Car Club of America, Inc., 29 Cal. App.3d 511, 105 Cal. Rptr. 904 (1972) and Goldstein v. D.D.B. Needham Worldwide, Inc., 740 *1137 F. Supp. 461 (S.D.Ohio 1990). We find neither case helpful.
In Celli, the California court questioned whether public policy would allow a release printed in six point type to permit a tort-feasor to shift the risk of injury to the victim even where the release is sufficient to encompass a defendant's own negligence. It noted that California statutes pertaining to retail installment sales and parking lots require at least eight point type. In the instant case, the release was printed in at least eight point type. Moreover, bold print and/or caps identified the document as a release, waiver, indemnification agreement, with assumption by the releasor of full responsibility for the risk of bodily injury or death.
In Goldstein, the court reviewed extensively the circumstances surrounding the execution of a release by invitees to a white water rafting trip in British Columbia. Goldstein was one of five persons who died when they were ejected from a raft on the Chilko River. The release was executed by the invitees while they were waiting for a flight in an airport terminal. The release was circulated by an individual not familiar with white water rafting and unable to give advice or to answer questions about the dangers of white water rafting. The court noted there was no evidence that Goldstein knew the activity for which he was signing the release included white water rafting. It also found significant that the release was not presented to Goldstein until he had committed to the trip by traveling to an interim destination. On two previous rafting trips in which Goldstein participated with the same host, the waivers were sent to Goldstein's home in advance of departure. However, there is nothing in the opinion that suggested that Goldstein had no time to review the release before signing it.
In the instant case, Drumheller evidently knew her destination and the activity that would be conducted. She had an opportunity to examine the release when it was given to her, and the ticket seller was available for questions. There is no evidence that a time limitation was placed on the examination, that the vehicle in which she was riding could not have been taken out of line for the review, or that a copy was unavailable for review after entrance but before the dangers of the event came into existence. The release could not have been furnished to her prior to arrival, since FORDA was not aware of her potential visit. While the mere presentation of a document that must be signed as a prerequisite to admission to a racing event should place a reasonable person on notice of unusual circumstances, the practicalities of the situation are that little, if any, attention would be paid to the details of the document, no matter what the size of the print or the time available for review. No one would think to ask for an assessment of the dangers of stepping onto the racing surface of an active racetrack  the answer is obvious to any reasonable person. Finally, most releases are one-sided; that is why they are looked upon with disfavor.
AFFIRMED.
DAUKSCH and COBB, JJ., concur.
*1138