[No. 44372. En Banc. June 2, 1977.]

VITALIS DIRK, ET AL, *Appellants*, v. AMERCO MARKETING COMPANY OF SPOKANE, *Respondent*.

*Duane Lansverk* (of *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson)*, for appellants.

*Lane, Powell, Moss & Miller, Arthur P. Schneider, Jr.,* and *Arthur W. Harrigan, Jr.,* for respondent.

DOLLIVER, J.—This is an appeal of a declaratory judgment accepted on certification from the Court of Appeals. The issues presented involve the interpretation to be given to an indemnification clause in the U–Haul dealership contract to which appellant Vitalis Dirk and respondent are parties.

Appellant Vitalis Dirk operated a service station in Moses Lake, Washington. In 1971, he entered into a U–

Haul dealership contract with respondent Amerco Marketing Company of Spokane, and became an authorized U–Haul dealer for the Moses Lake area.

Dirk was instructed to tell anyone renting U–Haul equipment from him that they were to contact a U–Haul dealer if they had trouble with the equipment and when he received calls from people who had rented U–Haul equipment in other locations, he was to help the customer with the equipment.

On July 26, 1971, Judy Nelson rented a Ford Econoline van from an authorized U–Haul dealer in Seattle. On July 27, 1971, the van became disabled near Moses Lake and she parked it almost completely on the shoulder of I–90. She then contacted Dirk as the authorized U–Haul dealer in the area. He attempted to start the van but concluded there was something wrong with the camshaft as the motor would not run.

Upon returning to his station, Dirk called the respondent in Spokane. He requested and received permission to tow the disabled U–Haul van into his service station.

With his son, Brian, he drove his pickup to the disabled van, attached a chain, and proceeded to pull the van off the shoulder and onto the freeway. Dirk was driving the pickup and Brian was steering the van. When the pickup and van were on I–90, the van was struck by a vehicle approaching from the rear. The four occupants of the other car commenced suit. All four suits were settled and payments made by or on behalf of the appellants.

Appellants commenced this action seeking indemnification under the terms of the U–Haul dealership contract which is the subject of this litigation. The contract was drafted by the respondent. It states, in relevant part:

> To hold Dealer harmless from any and all liability for property damage or personal injury arising out of accidents occasioned by the negligence of Marketing Co. or by defects in U–Haul equipment, provided such equipment is being rented or used under a duly executed U–Haul Rental Contract.

The Superior Court found that, at the time of the collision, the U–Haul van was defective as that term is used in the hold–harmless clause in the contract; the appellant was negligent in the manner in which he was towing the disabled van; and that the respondent was not negligent and the negligence of the appellant cannot be imputed to the respondent.

The Superior Court also found that, under the authority of *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 527 P.2d 1115 (1974), the court must strictly construe the indemnity clause in the contract against the indemnitee (appellants) and in favor of the indemnitor (respondent). The judge also found the phrase "occasioned by" as used in the hold–harmless clause to be ambiguous and concluded the phrase as used in the U–Haul contract meant "caused by." He held that the respondent had no obligation under the contract to hold appellants harmless from their liability for property damage and/or personal injury arising out of the collision between the van and the car on I–90.

The first issue raised by the appellants is whether the trial court erred in interpreting the words "occasioned by" as used in the U–Haul dealership contract to mean "caused by." They argue that the accident would not have occurred but for the defective van being stalled on the side of the road. They argue further that the respondent must indemnify the appellant if the defective van was *a cause in fact* of the accident. Respondent asserts the phrase "occasioned by" requires a causal relationship that is direct and that no such relationship was shown by the appellant or found in this case.

At the time the trial court considered the phrase "occasioned by," and found it to be ambiguous, the case of *Northern Pac. Ry. v. Sunnyside Valley Irrigation Dist.*, 11 Wn. App. 948, 527 P.2d 693 (1974), had been decided by the Court of Appeals but had not yet been heard by this court. In *Northern Pac. Ry. v. Sunnyside Valley Irrigation Dist.*, 85 Wn.2d 920, 540 P.2d 1387 (1975), we reversed the Court of Appeals and interpreted the phrase "occasioned

by," thus curing the ambiguity in the phrase for the purposes of the law in this state.

In *Northern Pacific,* Yakima County agreed to indemnify Northern Pacific for any damage "occasioned by" the county's improvements which were water pipelines and culverts. A break occurred in the bank of one of the irrigation canals—not an improvement—and flood waters flowed into the culvert. The culvert could not hold the water and, as a result, one of Northern Pacific's roadbeds washed away. In a split decision by the Court of Appeals, the majority held at page 953 that "*any* use of the culvert that results in damage or loss to the plaintiff is covered by the indemnity agreement." Judge Munson dissented, saying at page 955, "the district did not obligate itself, under the indemnity provisions . . . for any damage suffered by the railroad not proximately caused by their operation or maintenance work." In our reversal of the Court of Appeals, we held, at page 923:

> The washout of plaintiff's roadbed occurred independent of the culvert. The deluge resulted from a source only indirectly related to the culvert, and the washout of the roadbed was clearly not "occasioned" by the culvert. To extend this hold–harmless provision so far would be unreasonable. The culvert itself did not fail to operate effectively as a culvert; it only failed to transform itself into a tunnel at the crucial moment.
>
> Insofar as there is ambiguity in the 1913 permit, therefore, *we must limit its scope to damage actually "occasioned by the improvements," that is, resulting from a cause directly related to the culvert.*

(Italics ours.) Though the culvert in *Northern Pacific* indirectly caused the washout, it was insufficient to create a legal liability. A simple causation in fact was insufficient in that case, as it is here.

In *Jones v. Strom Constr. Co., supra* at 521, this court interpreted a hold–harmless clause indemnifying the contractor from all claims "arising out of," "in connection with," or "incident to" the subcontractor's "performance." This is broader language than "occasioned by." This court

held that "unless an overt act or omission" on the part of the subcontractor "caused or concurred in causing the loss involved, indemnification would not arise." In *Jones,* the contractor's negligence was the sole cause of the accident. The court observed that the accident would not have happened but for the subcontractor's presence on the job; however, this was not sufficient to constitute a "cause" of the accident. The respondent compares *Jones* to this case, arguing that, although the accident would not have happened unless the defective van was on the roadside, the defect is a remote and indirect cause of the accident; that the negligence of the appellant was the sole, direct cause of the accident. We essentially agree with respondent's analysis although we note that it is inexact to the extent that it is comparing a situation of no culpability (the subcontractor) to a situation of remote culpability (the defective van).

In *Tucci & Sons, Inc. v. Carl. T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970), the Court of Appeals held that, under an indemnity clause which was nearly identical to that in *Jones,* the subcontractor agreed to indemnify the contractor for losses sustained by the indemnitee even though such loss may be occasioned solely by the negligence of the indemnitee. The court found that, if the employee had not been working pursuant to the subcontract, he would not have been injured, using the "but for" rationale urged by the appellant here. While this authority would be most helpful to appellants' position, it was specifically overruled in *Jones* insofar as it was inconsistent with *Jones.*

■ Appellants are not challenging the Superior Court's finding they were negligent. They are in essence urging us to interpret the clause in question to indemnify them for their own acts of negligence. In *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947), we approved the rule that an indemnity contract will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts where such intention is not expressed in *unequivocal terms. See also*

175 A.L.R. 1 (1947). Although we overruled that case in *Jones* insofar as it was inconsistent with *Jones,* the policy stated in *Griffiths* and the rules of construction applicable to indemnity contracts, as stated above, were unaffected. We repeated that clauses purporting to exculpate an indemnitee from liability for losses flowing from his own acts or omissions are not favored as a matter of public policy and are to be clearly drawn and strictly construed. *See* 6A A. Corbin, *Corbin on Contracts* § 1472 (1962). *Cf. Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 469, 423 P.2d 926 (1967). The indemnity provision here did not specifically state that Vitalis Dirk would be indemnified for damage caused by his own acts of negligence.

An often–repeated rule of construction for interpreting indemnity clauses is that they are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of performance of the contract. *Jones v. Strom Constr. Co., supra.* Bearing this rule in mind, we find it difficult to believe that, as a business practice, Amerco intended to indemnify U–Haul dealers for their own acts of negligence without specific wording to that effect or the payment of a special premium as protection against all liability.

The trial court found the van was defective; the appellants were negligent; and the phrase "occasioned by" meant "caused by." By its finding that the respondent had no obligation to hold appellants harmless for the damage resulting from the collision, the court impliedly found a direct causal relationship to exist between the appellants' negligence and the damage. Even when we consider the remote connection of the defective van with the accident, we find that the trial court did not err in its conclusion that the appellants must bear the loss resulting from the collision.

Appellants also raise the question whether the alleged ambiguity in the hold–harmless clause should be construed in favor of the indemnitee or the indemnitor. This issue

presents rules of construction which are contradictory as applied to this case: A general rule that the contract should be construed against the drafter, the respondent here, and a specific rule that an indemnity clause should be construed in favor of the indemnitor. *See Jones v. Strom Constr. Co.,* *supra.* However, since the *Northern Pacific* case cured the previously existing ambiguity in the phrase, we find it unnecessary to reach this issue.

We affirm the holding of the trial court.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.