[No. 3424–II.   Division Two.   May 23, 1980.]

DALE CALKINS, *Plaintiff,* v. LORAIN DIVISION OF
KOEHRING CO., ET AL, *Defendants,* MITCHELL
BROS. CRANE DIVISION, INC., *Appellant,*
ROY T. EARLEY COMPANY,
*Respondent.*

*Stephen P. Ryder* and *John F. Kennedy,* for appellant.

*Duane Tewell* and *David A. Shaw,* for respondent.

PEARSON, J.—Mitchell Brothers Crane Division, Inc. (Mitchell), appeals the dismissal of its third–party indemnity action arising out of its lease of a crane to the Roy T. Earley Company (Earley). The dispositive issue is whether the lease's indemnity provision encompassed Mitchell's liability arising out of the defective condition of the crane. We affirm the dismissal, finding the clause did not indemnify Mitchell for liability incurred due to its lease of an improperly equipped crane.

In May of 1974 Dale Calkins, an employee of Earley, was injured in a crane accident when a tank weighing several tons lowered onto his foot. The crane was owned by Mitchell and had been manufactured by Lorain Division of Koehring Company and Lampson, Inc. (Lorain). Mitchell leased the crane to Earley through a contract which contained the following indemnity provision:

> Liability of Lessee. Liability for injury, disability and death of workmen and other persons caused by the operation, handling or transportation of the equipment during the Rental Period, shall be assumed by the Lessee, and he shall indemnify the Lessor against all such liability.

Earley leased the crane for use in dismantling a chemical plant, and the crane was operated and maintained by Earley employees. Following the accident, Calkins sued the crane manufacturer, Lorain, and he later added the lessor, Mitchell, as a party defendant. Calkins alleged that Mitchell negligently failed to install a safety device known as a "dog" or "pawl" on the crane. This was a fail–safe mechanism which, if used by the crane operator, would

have prevented the tank from lowering onto Calkins. Mitchell tendered defense of the action to Calkins' employer, Earley, pursuant to the lease's indemnity provision. Earley refused to defend, and Mitchell instituted this third–party action for indemnity. Mitchell ultimately settled Calkins' claim for $75,000, and Earley refused to indemnify Mitchell for this loss. The trial court dismissed the indemnity action, holding as a matter of law that the lease provision was not broad enough to indemnify Mitchell for liability caused by the failure to install the safety device.

It is uncontested on appeal that the accident resulted from the joint or concurrent negligence of the parties. Earley argues, however, that Mitchell could not have been liable to Calkins on any theory because the failure to install the safety device was not a proximate cause of the accident. In view of our disposition of the case it is unnecessary to reach this issue, but we will assume, without deciding, that Mitchell was indeed exposed to a risk of liability for the injury to Calkins. *See Northern Pac. Ry. v. National Cylinder Gas Div. of Chemetron Corp.*, 2 Wn. App. 338, 467 P.2d 884 (1970).

Earley asserts that the industrial insurance act, RCW Title 51, immunizes the company from all liability for an injury to their employee despite the contractual indemnity obligation, and that therefore the court lacked jurisdiction to try the indemnity claim. The court in *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242, 588 P.2d 1308 (1978), held that "the Act 'immunizes', from judicial jurisdiction, all tort actions which are premised upon the 'fault' of the employer vis–a–vis the employee" but went on to explain that courts do have jurisdiction where an employer voluntarily assumes an independent duty or obligation to the third party. The written indemnity agreement entered into by the employer and the crane owner in the instant case does purport to create an independent contractual obligation as well as interpretation issues over which the court had jurisdiction.

*Redford v. Seattle,* 24 Wn. App. 484, 602 P.2d 717 (1979); *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.,* 1 Wn. App. 1035, 467 P.2d 386 (1970).[1]

The primary issue is whether the trial court correctly interpreted the lease's indemnity provision. Mitchell asserts that the language indemnifying for liability "caused by the operation, handling or transportation of the equipment" was sufficiently broad to include Mitchell's liability caused by the condition of the crane it leased to Earley. In reviewing this contention we note that it involves two important public policies. The first policy disfavors agreements purporting to deprive an employer of the immunity provided by the industrial insurance act. This policy arises from the act itself, which provides employers with freedom from suit for injuries to their employees in return for payments into the compensation fund and the loss of legal defenses. *See Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 158 P. 256 (1916); *Montoya v. Greenway Aluminum Co.,* 10 Wn. App. 630, 519 P.2d 22 (1974). Where employers agree to contract away their immunity under the act and to indemnify third parties for employee injuries, such an intent should be clearly expressed in the agreement.

The second policy disfavors allowing an indemnitee to contract away liability resulting from his own negligence. *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947).[2] In the construction setting this policy is expressed by RCW 4.24.115, which invalidates indemnity clauses to the extent they attempt to protect indemnitees for loss arising from their sole negligence. In *Redford v. Seattle, supra,* however, the court allowed recovery in a construction setting where the employer and the third party were concurrently negligent in causing the injury. Although this result is not expressly prohibited by

---

[1]*Overruled on other grounds* in *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974).

[2]*Overruled on other grounds* in *Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 527 P.2d 1115 (1974).

RCW 4.24.115, it tends to violate the policy expressed in the statute. Where agreements provide indemnity based on concurrent negligence, indemnitees are protected against a liability exposure created by their own negligence. As in situations where the law allows persons to indemnify themselves against liability arising from their sole negligence, an intent to indemnify for concurrent negligence must be clearly expressed. A contract providing indemnity for concurrent negligence will be strictly construed, with any doubts resolved in favor of the indemnitor. *See Dirk v. Amerco Marketing Co.*, 88 Wn.2d 607, 565 P.2d 90 (1977); *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 527 P.2d 1115 (1974). The indemnity clause in the instant case violated both of the policies discussed above. The clause did not expressly state an intent to deprive Earley of his immunity under the industrial insurance act. The parties would have sufficiently indicated such an intent if, in recognition of the second policy, they had expressly provided for indemnity where the lessor and lessee were concurrently negligent.

Not only did the indemnity clause fail to expressly include concurrent negligence, it was also ambiguous concerning whether it indemnified Mitchell for liability caused by the condition of the crane. It can be argued that the crane's condition was included in the clause under liability related to the "operation" of the crane. If the parties had so intended, they could have resolved this ambiguity by including "operation, handling or transportation" *or condition* of the crane in the indemnity provision. Ambiguous contracts are construed against the drafter (in this instance Mitchell), *Felton v. Menan Starch Co.*, 66 Wn.2d 792, 405 P.2d 585 (1965), and ambiguous indemnity contracts are construed against the indemnitee (also Mitchell). *Dirk v. Amerco Marketing Co., supra.* Thus, we construe the ambiguous provision in favor of Earley, and hold that it did not indemnify Mitchell for liability arising out of the condition of the crane.

Mitchell argues that unless the clause is construed to provide indemnity in the instant case, there are no possible

circumstances under which the clause could operate. Washington courts have held that indemnity contracts should be given a reasonable construction and should not be "so narrowly or technically interpreted as to frustrate their obvious design," *Union Pac. R.R. v. Ross Transfer Co.*, 64 Wn.2d 486, 488, 392 P.2d 450 (1964), quoting from 27 Am. Jur. *Indemnity* § 13, at 462 (1940). In the case at bench, however, there is an obvious situation apart from the facts presented where the indemnity clause would operate. The indemnity provision was part of a standard form lease contract employed by Mitchell in many transactions. As disclosed by the record, on some occasions Mitchell provided crane operators as part of a lease agreement. The indemnity clause was likely designed to operate in those situations, as Mitchell would be exposed to a risk of liability for the operation of the crane.

The judgment of dismissal is affirmed.

REED, C.J., and PETRICH, J., concur.