[No. 12258-4-I.   Division One.   January 7, 1985.]

BETTE MCDOWELL, as *Guardian ad Litem, Plaintiff,* v. THE AUSTIN COMPANY, *Appellant,* CANRON CORPORATION, ET AL, *Respondents.*

444

*Merrick, Hofstedt & Lindsey, Thomas Harris, Hackett, Beecher, Hart, Branom & Vavrichek,* and *John Hackett,* for appellant.

*Lane, Powell, Moss & Miller* and *Robert Thomas,* for respondents.

SCHOLFIELD, A.C.J.—The Austin Company appeals a summary judgment denying its claim for indemnity from Canron Corporation and granting Canron's claim for indemnity from the Austin Company. Canron cross–appeals that portion of the judgment awarding prejudgment interest at the rate of 6 percent per annum. We reverse and remand to the superior court for further proceedings.

## FACTS

Austin contracted with the Boeing Company to serve as general contractor for the construction of a hangar and related buildings at Paine Field in Everett, Washington. In 1978, Canron, a subcontractor, and Austin executed a unit–

cost subcontract for steel erection, which provided, in part, in article 8:

(b) Subcontractor [Canron] agrees to indemnify and save harmless Owner and Austin against all liability for personal injury, including death resulting therefrom, sustained by any person directly or indirectly employed by Subcontractor or its subcontractors, caused or alleged to have been caused, directly or indirectly, by an act or omission, negligent or otherwise, by Owner or Austin or persons directly or indirectly employed by them, and to assume the defense of any action brought by persons so injured or their personal representatives against Owner or Austin to recover damages for such injuries.

(c) Subcontractor also agrees to indemnify and save harmless Owner and Austin against all liability for personal injuries, including death resulting therefrom, and against all liability for property damage, sustained by any other persons or corporations whatsoever, including Austin's or Owner's employees, caused or alleged to have been caused, directly or indirectly, by any act or omission, negligent or otherwise, on the part of Subcontractor, or its subcontractors, or persons directly or indirectly employed by them and arising out of the performance, or in any way connected with the performance of this Subcontract, even though some act or omission, negligent or otherwise, of Owner or Austin or persons directly or indirectly employed by them may also be a cause or an alleged cause of such injury.

The subcontract also provided that Canron would perform the work in accordance with the terms of a purchase order. The purchase order required that Canron acquire liability insurance and provide certificates of compliance with the insurance requirements prior to proceeding with the work.

On March 16, 1979, Walter K. Hawes, employed by Canron as an ironworker, fell approximately 115 feet to the ground and suffered serious injuries. It appears to be undisputed that Hawes was not using a safety line. Bette McDowell, as guardian ad litem for Walter Hawes, sued Austin to recover damages arising out of Hawes' injuries. Austin tendered defense of the case to Canron, based upon

article 8 of the subcontract, and following Canron's rejection of the tender, filed a third party complaint against Canron.

Austin and Canron settled the Hawes claim prior to trial for a total of $1,899,000. Of that amount, Canron paid $1,329,300 and Austin contributed the balance. Austin and Canron entered into a written "Stand–Still Agreement" on April 23, 1980, in which they agreed to reserve for later determination which party would bear the ultimate responsibility for the settlement. The Stand–Still Agreement further provided:

> 4. With respect to any legally binding decision upon the parties concerning the ultimate responsibility for said settlement, or any portion thereof, the prevailing party shall be entitled to interest on the amount of their [sic] prior contribution, or portion thereof, at the rate established by RCW 19.52.010; provided, that upon entry of any judgment, said judgment shall draw interest from the date of entry at the rate of interest applicable thereto under RCW 4.56.110, as now or hereafter amended.

Following the Hawes settlement, Austin filed a motion for summary judgment, alleging that Canron was obligated to indemnify Austin for Austin's contribution to the settlement. Canron filed a cross motion for summary judgment, alleging that it was not liable to indemnify Austin in any amount and was entitled to a judgment against Austin for the sum contributed to the Hawes settlement plus interest thereon at the rate agreed upon by the parties in the Stand–Still Agreement. In a judgment dated August 25, 1982, the trial court denied Austin's motion for summary judgment and granted Canron judgment against Austin in the amount of $1,329,300 plus prejudgment interest at the rate of 6 percent per annum.

## INDEMNITY

Austin contends that paragraph 8(b) of the indemnity provisions expressly provides for indemnity by Canron, where Austin causes or is alleged to have caused an injury to an employee of Canron. Austin argues that the language

"sustained by any person directly or indirectly employed by Subcontractor" satisfies the requirement of *Brown v. Prime Constr. Co.*, 102 Wn.2d 235, 684 P.2d 73 (1984) that the contract specifically provide indemnity for a claim brought by an employee of the indemnitor.

Canron argues that in order to allow indemnity for injury to the indemnitor's employee, the indemnity clause must expressly provide for indemnity in cases of concurrent negligence. RCW 4.24.115[1] makes unenforceable promises in construction contracts to indemnify for losses resulting from the sole negligence of the indemnitee. Because paragraph 8(b) does not make reference to cases involving concurrent negligence, Canron contends that the trial court was correct in construing paragraph 8(b) as providing indemnity only in cases where the loss was the result of the sole negligence of the indemnitee.

■■ The Industrial Insurance Act, RCW Title 51, places upon the employer the duty to compensate injured workers without regard to fault but gives the employer immunity from employee suits for those injuries. *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 158 P. 256 (1916). Indemnity agreements signed by employers covered by the Industrial Insurance Act have the effect of making the employer fully liable for the employee's injury, where the employee recovers judgment for his or her injuries from the indemnitee. Because of this conflict with the workmen's compensation scheme, our Supreme Court has held that such indemnity clauses are enforceable only in those cases where the intent to waive the immunity of the Industrial Insurance Act is clear.

We hold that an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by

---

[1]RCW 4.24.115 provides in pertinent part:

"A . . . promise . . . in . . . a contract or agreement relative to the construction . . . of, any building, . . . purporting to indemnify against liability for damages arising out of bodily injury to persons . . . caused by or resulting from the sole negligence of the indemnitee, . . . is void and unenforceable."

so stating or by specifically stating that the indemnitor assumes potential liability for actions brought by its own employees.

*Brown v. Prime Constr. Co., supra* at 239–40.

In *Brown,* the court denied indemnity, holding the indemnity clause at issue was unenforceable because it made no specific reference to suits brought by the indemnitor's employees. The language of the indemnity clause of the subcontract between Austin and Canron, however, does provide for suits by Canron's employees. Inclusion of that language clearly shows an intent to waive the immunity of the Industrial Insurance Act. An employer cannot agree to indemnify another against suits for injuries "sustained by any person directly or indirectly employed by Subcontractor" without intending to waive its immunity under the Industrial Insurance Act as to those suits.

In *Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980), the indemnity agreement was upheld and enforced for precisely the same reason we enforce the indemnity agreement in this case. In *Redford,* the indemnity language made specific reference to suits by employees of the contractor–indemnitor. At page 240, the court in *Brown* expressly approves the holding in *Redford* for this reason.

We reject the interpretation of paragraph 8(b) urged by Canron for the additional reason that its interpretation, if correct, would make paragraph 8(b) unenforceable pursuant to the provisions of RCW 4.24.115. We reject the argument because the purpose of paragraph 8(b) is to provide indemnity to Austin Company for "all liability for personal injury . . . sustained by any person . . . employed by Subcontractor . . . caused or alleged to have been caused . . . by . . . Austin". To accept the interpretation urged by Canron would make the entire paragraph a nullity. This would be an absurd and strained result completely contrary to the obvious purpose for inclusion of the paragraph in the subcontract.

". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than

defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

*Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 488, 392 P.2d 450 (1964) (quoting from 27 Am. Jur. *Indemnity* § 13, at 462 (1940)); *see Tri–M Erectors, Inc. v. Donald M. Drake Co.,* 27 Wn. App. 529, 532, 618 P.2d 1341 (1980), *review denied,* 95 Wn.2d 1002 (1981).

Whether there is concurrent negligence by Canron or some third party is immaterial to the purpose of the indemnity clause. Austin's purpose was to protect itself from whatever liability might be asserted against it, irrespective of whether other defendants might also be involved, or whether Canron itself might also be negligent. A provision relating to concurrent negligence is not necessary to clear expression of the intent of Austin or the intent of Canron to waive its immunity to employee suits.

Canron concedes that "sustained by any person directly or indirectly employed by Subcontractor" in paragraph 8(b) satisfies the test set forth in *Brown* because it specifically states that Canron assumes potential liability for actions brought by its own employees. Canron contends, however, that it waived immunity in paragraph 8(b) only for injuries caused by Austin's sole negligence, not for injuries caused by Austin's and Canron's concurrent negligence. Canron argues that paragraph 8(b) provides that Canron will indemnify Austin against liability for injuries caused by *Austin,* not Canron. It argues that paragraph 8(b) should be compared with paragraph 8(c), which provides that Canron will indemnify Austin against liability for injuries caused by *Canron* and which expressly provides for concurrent negligence. Canron contends that its intent to waive immunity for concurrent negligence in paragraph 8(b) is, at best, ambiguous and, therefore, paragraph 8(b) should be construed against Austin as the drafter and indemnitee.

We do not agree that paragraph 8(b) waives immunity only for injuries caused by Austin's sole negligence or that it is ambiguous. Paragraph 8(b) does not refer to Austin's "sole negligence" but rather to Austin's protection against "all liability". Under the rule of joint and several liability, Austin is liable for injuries to Canron employees not only for its own negligence, but also for the concurrent negligence of Canron. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978). We conclude that Austin's protection against "all liability" in paragraph 8(b) included protection against Austin's liability for Canron's negligence, as well as for its own negligence.

A comparison of paragraphs 8(b) and 8(c) supports, rather than contradicts, this conclusion. It is true that paragraph 8(c) provides indemnity for injuries caused by Canron, rather than Austin, and that, contrary to paragraph 8(b), it expressly provides indemnity for concurrent negligence. However, paragraph 8(b) provides indemnity for injuries to Canron employees, while paragraph 8(c) provides indemnity for injuries to "any other persons". The differences in the paragraphs are consistent with the intent that, as to "any other persons", Canron indemnify Austin only if Canron's acts were a cause of the injuries.

Canron relies on *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 613 P.2d 143 (1980) for its argument that an intent to indemnify against concurrent negligence must be clearly expressed in order for an indemnity agreement to be enforceable against an employer. Language to that effect in *Calkins* has not been applied by our Supreme Court to indemnity cases on a factual pattern such as we have here. In *Calkins,* the issue was whether language indemnifying for liability "caused by the operation, handling or transportation of the equipment" was sufficiently broad to include the lessor's liability caused by an alleged defective condition of a leased crane. *Calkins,* at 207. The indemnity clause made no reference to negligence. The court found that the indemnity clause did not express an intent to

waive immunity under the Industrial Insurance Act and stated that if the indemnity clause had expressly provided for indemnity where the lessor and lessee were concurrently negligent, then an intent to waive immunity would have been indicated. *Brown v. Prime Constr. Co., supra,* states no requirement of express mention of concurrent negligence. Concluding that Canron intended to waive immunity, we hold that the indemnity agreement expressed in paragraph 8(b) is enforceable.

## APPLICABLE INTEREST RATES

The trial court awarded Canron interest on its contribution to the Hawes settlement from April 23, 1980, the date of the Stand–Still Agreement, until August 25, 1982, the date of judgment, at the rate of 6 percent per annum, the rate provided in RCW 19.52.010 on the date of the Stand–Still Agreement.[2] The judgment itself drew interest at the rate of 12 percent per annum, the rate provided by RCW 4.56.110 at that time.

■■ The rule guiding interpretations of contracts has been stated:

Thus, the courts are in nearly universal agreement in construing written contracts that the primary purpose of a judicial interpretation is to ascertain the parties' intentions, give effect to them and make the parties' intentions controlling. *Silen v. Silen,* 44 Wn.2d 884, 271 P.2d 674 (1954); *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954). The intentions of the parties should be ascertained from the entire writings, and, if at all possible, all parts of the writings shall be construed so as to harmonize with one another. 17 Am. Jur. 2d *Contracts* § 258

---

[2]The parties are in apparent agreement that calculation of prejudgment interest shall commence with the date of the Stand–Still Agreement.

RCW 19.52.010, our usury statute, provided on the date of the Stand–Still Agreement, as follows:

Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of six percent per annum where no different rate is agreed to in writing between the parties.

The statute was amended effective July 26, 1981 to provide for 12 percent interest.

(1964); *Gray v. Gregory,* 36 Wn.2d 416, 218 P.2d 307 (1950).

The most reliable clue to the parties' intentions in a deliberately prepared and negotiated contract is the language of the contract. *Hastings v. Continental Food Sales, Inc.,* 60 Wn.2d 820, 376 P.2d 436 (1962); *Boeing Airplane Co. v. Firemen's Fund Indem. Co., supra; Gwinn v. Cleaver,* 56 Wn.2d 612, 354 P.2d 913 (1960).

*Grant Cy. Constructors v. E.V. Lane Corp.,* 77 Wn.2d 110, 120–21, 459 P.2d 947 (1969).

If the parties had agreed to a prejudgment interest rate of 6 percent, that rate would control here. However, instead of setting a fixed rate, they elected in the agreement to have the amount prescribed by RCW 19.52.010 be controlling. In so doing, they made the interest rate subject to change by amendment of the statute.

The agreement does not address the possibility of the interest rate being amended between the date of the agreement and the date of entry of judgment. A reasonable interpretation of the agreement is that the parties intended RCW 19.52.010 to control, rather than a fixed rate. If they had intended 6 percent to be controlling, irrespective of any amendment of the statute, they could have so provided in the agreement. We conclude that the 6 percent interest rate prescribed by RCW 19.52.010 should be the controlling prejudgment interest rate from the date of the Stand–Still Agreement up to the effective date of the amendment, which was July 26, 1981. From July 26, 1981, the effective prejudgment interest rate up to the date of judgment shall be 12 percent.

The issue of whether Hawes' injuries were proximately caused by the sole negligence of Austin has never been resolved and cannot be decided on the record before us. It is a factual issue that cannot be resolved on summary judgment. This case must be remanded to the trial court for a determination of that issue. *Steinke v. Boeing Co.,* 525 F. Supp. 234, 237 (D. Mont. 1981). If Hawes' injuries were not caused by the sole negligence of Austin, Austin is entitled to indemnity consistent with this opinion. If Hawes' inju-

ries were proximately caused by the sole negligence of Austin, then RCW 4.24.115 would invalidate the indemnity agreement and Canron would be entitled to indemnity from Austin. In either event, prejudgment interest will be allowed as provided herein.

Reversed and remanded.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied February 7, 1985.

Review granted by Supreme Court May 10, 1985.