

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, a corporation, | ) ) ) | No. 37900-1-III |
| Petitioner, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ALCOA, INC., a corporation; ARCONIC, INC. a corporation; and ALCOA CORP., a corporation, | ) ) ) ) ) | |
| Respondents. | ) | |

SIDDOWAY, C.J. — At issue is the construction of contractual indemnity language under which BNSF Railway Company (BNSF) claims to be entitled to full indemnification even if its own negligence was a partial cause of its loss.

For a contract to indemnify an indemnitee from its own negligence has never been found to be against public policy by Washington courts. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup America, Inc.*, 173 Wn.2d 829, 834, 271 P.3d 850 (2012) (citing *Nw. Airlines v. Hughes Air Corp.*, 104 Wn.2d 152, 156, 702 P.2d 1192 (1985)). But Washington, like most other states, "appl[ies] the 'general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligence unless this intention is expressed in clear and

unequivocal terms.'" *Id.* at 836 (quoting *NW Airlines*, 104 Wn.2d at 154). No "'magic words'" are required. *Id.* at 854.

In an approach not presented in prior Washington decisions, the parties' contract, under which BNSF provided railway service to an Alcoa[1] facility, imposed on Alcoa a duty to keep the tracks and close environs free of obstructions. Having created the duty, the provision added Alcoa's agreement to indemnify BNSF from claims arising out of injury or death to persons occurring directly or indirectly by reason of any breach. Finally, the provision included language that BNSF's operation with knowledge of Alcoa's breach would not be deemed a waiver of Alcoa's duty or BNSF's right to recover for resulting damages.

The trial court ruled as a matter of summary judgment that this approach was not sufficiently clear and unequivocal to create an enforceable obligation to indemnify BNSF if it was concurrently negligent. We disagree. Imposing the contractual obligation on Alcoa was a sufficiently clear and unequivocal allocation of the risk. We reverse the decision and remand with directions to enter summary judgment in favor of BNSF.

### FACTS AND PROCEDURAL BACKGROUND

Alcoa owns a facility for aluminum smelting, casting, and rolling in Malaga, Washington, commonly known as the Alcoa Wenatchee Works. BNSF and Alcoa each

---

[1] Like the parties, we refer to defendant/respondents Alcoa, Inc., Arconic, Inc. and Alcoa Corp. collectively as "Alcoa."

2

own and operate some of the railroad tracks that serve Alcoa's facility. The tracks bring

raw materials into the Alcoa facility and carry out finished aluminum products.

BNSF's and Alcoa's maintenance and operation on the subject tracks has been

governed since 1978 by an industrial track agreement (ITA). Section 5 of the ITA, which

is identified in the contract's margin as dealing with "Clearances," provides in relevant

part:

> **Section 5.** Industry [Alcoa] shall not place or permit to be placed, or to remain, any material, structure, pole or other obstruction within 8 1/2 feet laterally of the center or within 23 feet vertically from the top of the rail of said track . . . . Industry agrees to indemnify Railroad [BNSF] and save it harmless from and against any and all claims, demands, expenses, costs and judgments arising or growing out of loss of or damage to property or injury to or death of persons occurring directly or indirectly by reason of any breach of the foregoing or any other covenant contained in this agreement.
> . . . .
> Railroad's operation over the track with knowledge of an unauthorized reduced clearance shall not be or be deemed to be a waiver of the foregoing covenants of Industry contained in this Section 5 or of Railroad's right to recover for such damages to property or injury to or death of persons that may result therefrom.

Clerk's Papers (CP) at 66-67. In industry parlance, an obstruction placed within the

required clearance area is referred to as being "foul of the track."

In addition to the indemnification provided by the track-clearance provision,

section 7 of the ITA, which is identified in the contract's margin as dealing with

"Liability," is a general indemnification clause. It provides in relevant part:

3

> **Section 7.** Industry agrees to Indemnify and hold harmless Railroad for loss, damage, injury or death from any act or omission of Industry, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or near said track, and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally. Notwithstanding anything herein contained to the contrary, nothing herein is to be construed as an indemnification against the sole negligence of Railroad, its officers, employees and agents.

CP at 67.

On the night of November 24, 2014, BNSF employees delivered three tank cars containing pitch to track 6 in the Alcoa yard. The next day, one of Alcoa's employees separated and moved the three cars because they blocked access to an ore shed. Alcoa admits that one of the pitch cars was moved to a position that was foul of adjacent track 9.

Later that evening, a BNSF crew moved a 12-car train from the BNSF yard to the Alcoa yard by "shov[ing]" it—meaning to push it, using a locomotive at the rear of the train. CP at 438. When railcars are being shoved, the conductor or another crew member advances in front, in radio contact with the engineer, to watch for potential hazards and obstructions to ensure safe passage of the train and its personnel.

Conductor Jay Narozny and student conductor Adam Link rode on the lead car during the "shove" down track 9. They rode on the sides of the lead car, which is

generally not permitted by BNSF work rules.[2]  As the 12-car train approached the track 6

switch, Mr. Narozny could see that a pitch car had been moved; seconds later he realized

it was too close.  He yelled to Mr. Link, "[c]ar was foul," and yelled, "[S]top, stop, stop"

on his radio.  CP at 472-73.  The engineer and brakeman were unable to stop the train in

time to avoid a collision.  Mr. Link was pinched between the lead car and the pitch car on

the adjacent track and suffered serious injury.

Mr. Link and his wife filed suit against Alcoa and BNSF.  They sued Alcoa for

premises liability and loss of consortium, and sued BNSF for negligence under the

Federal Employers' Liability Act (FELA),[3] a statute that does not permit recovery for

loss of consortium.  The two companies asserted cross claims against each other but

ultimately reached a joint settlement with the Links, reserving rights against one another.

Because loss of consortium was not recoverable against BNSF, the parties agreed that

18.725 percent of the total settlement amount would be allocated to the consortium

claims and Alcoa would advance that portion of the settlement, which was otherwise

initially borne equally.  Both BNSF and Alcoa reserved the right to seek contribution or

indemnity from the other in a later proceeding, with all issues to be reviewed de novo.

---

[2] Work rules provide that "BNSF workers must not ride the side of equipment unless safe and necessary to do so.  This includes ensuring there is sufficient clearance to ride the side of the equipment, especially on industry track where a customer's workers can move cars and equipment."  CP at 521.

[3] 45 U.S.C. § 51-60.

BNSF then brought the action below, seeking to recover its losses and expenses incurred in the Link lawsuit. Alcoa filed counterclaims. In cross motions for summary judgment brought thereafter, BNSF argued that under section 5 of the parties' agreement, Alcoa must fully indemnify BNSF regardless of evidence that BNSF's employees' negligence might have contributed to the losses. It also moved for summary judgment on Alcoa's affirmative defenses and counterclaims.

Alcoa sought a ruling that section 5 was unenforceable and, in any event, section 7 controlled the parties' rights of indemnification. It argued the parties were jointly negligent and section 7 required the parties to equally bear the losses, including the cost of settling the consortium claim.

The trial court ruled that section 5 was "not applicable" and "unenforceable" because it "does not clearly spell out that BNSF would be indemnified for damages caused by its own negligence" and whether BNSF was negligent was disputed and required trial. CP at 686. It ruled that section 7 of the ITA governed the parties' liability to the Links and, in the event both parties were found negligent, they must bear equally the resulting liability, including for loss of consortium.

BNSF sought discretionary review of the trial court's summary judgment rulings, supported by a stipulation of the parties that the trial court's order involved controlling

6

questions of law as to which there is substantial ground for disagreement.[4]  Our

commissioner granted discretionary review.

ANALYSIS

BNSF contends in this interlocutory appeal that the trial court erroneously ruled

that section 5 of the ITA is unenforceable and, having refused to enforce section 5,

erroneously ruled that section 7 imposes an obligation on BNSF to share the cost of

settling the Links' loss of consortium claim.  Where material facts are undisputed and

there is no extrinsic evidence presented on the issue, the meaning of a contract may be

decided as a matter of law.  *Snohomish County*, 173 Wn.2d at 834.  Following summary

judgment, review of these purely legal questions is de novo.  *Fluke Corp. v. Hartford*

*Acc. & Indem. Co.*, 145 Wn.2d 137, 143, 34 P.3d 809 (2001) (citing *Island County v.*

*State*, 135 Wn.2d 141, 160, 955 P.2d 377 (1998)).

Except for limited contexts not at issue here, no public policy is violated by an

indemnification contract that requires the indemnitor to be responsible for losses resulting

---

[4] The trial court dismissed Alcoa's affirmative defenses, including (1) that BNSF committed gross negligence or reckless misconduct, (2) that Alcoa had just cause for its actions, and (3) that BNSF's conduct was an intervening, superseding cause for the injuries to Mr. Link.  The trial court also granted summary judgment for BNSF on Alcoa's counterclaim for contribution under chapter 4.22 RCW.  These rulings are not appealed.

from an indemnitee's negligence—even an indemnitee's sole negligence.[5] *NW Airlines*, 104 Wn.2d at 158. But Washington courts have long applied two countervailing principles when construing such provisions.

One is that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts unless that intention is expressed in clear and unequivocal terms. *Griffiths v. Henry Broderick, Inc.*, 27 Wn.2d 901, 904, 182 P.2d 18 (1947), *overruled on other grounds by Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 527 P.2d 1115 (1974); *and see Snohomish County*, 173 Wn.2d at 836. An indemnity clause that is contended to exculpate an indemnitee from liability for its own negligence will be strictly construed, with any doubts settled in favor of the indemnitor. *NW Airlines*, 104 Wn.2d at 157-58 (citing *Jones*, 84 Wn.2d at 520). "Formulaic language" such as a statement that "'X indemnifies Y for Y's own negligence'" is not required, however. *Snohomish County*, 173 Wn.2d at 836. "Concurrent negligence" need not be mentioned. *McDowell v. Austin Co.*, 105 Wn.2d 48, 52-53, 710 P.2d 192 (1985); *accord NW Airlines*, 104 Wn.2d at 155-56 (stating, even where the clause at issue spoke of the indemnitee's negligence, "the term negligence itself need not actually be used").

---

[5] Only RCW 4.24.115, addressing certain categories of construction, property development and motor carrier contracts, provides that contracts indemnifying the indemnitee from its sole negligence are void, and indemnification from the indemnitee's or its agents' concurrent negligence is limited.

The countervailing principle is that contracts of indemnity ""'"must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed."'" *Snohomish County*, 173 Wn.2d at 835 (quoting *McDowell*, 105 Wn.2d at 54 (quoting *Union Pac. R.R. Co. v. Ross Transfer Co.*, 64 Wn.2d 486, 488, 392 P.2d 450 (1964))). Stated differently, since an agreement to indemnify against an indemnitee's own negligence is a matter of permissible agreement, "'the highest public policy is found in the enforcement of the contract which was actually made.'" *Nw. Airlines*, 104 Wn.2d at 158 (quoting *Govero v. Standard Oil Co.*, 192 F.2d 962, 965 (8th Cir. 1951) (quoting *Santa Fe*, *Prescott & Phx. Ry. Co. v. Grant Bros. Constr. Co.*, 228 U.S. 177, 188, 33 S. Ct. 474, 57 L. Ed. 787 (1913))).

The legal question presented is whether Alcoa's track-clearance covenant and its associated promise to indemnify and save BNSF harmless clearly and unequivocally demonstrates the parties' intent that BNSF was fully indemnified in the event of loss resulting from Alcoa's breach of the covenant. Two courts construing materially identical provisions have found them to provide full indemnity whether or not negligence by the railroad was a contributing cause to an injury. *Anthony v. La. & Ark. Ry. Co.*, 316 F.2d 858 (8th Cir. 1963) (applying Arkansas law); *Burlington N. R.R. Co. v. Stone Container Corp.*, 934 P.2d 902, 905 (Colo. Ct. App. 1997) ("fact finder could properly find that the employee's injuries arose, at least indirectly, from [Stone Container]'s

breach of the [a]greement" in which case the duty of indemnification was owed). Alcoa argues that those decisions were not applying Washington law, however, and Washington cases call for a different result.

Section 5 not only contains a promise of indemnification, it begins with Alcoa's promise to keep the tracks clear. In this respect, it is unlike all of the Washington decisions cited by Alcoa. Section 5 does not provide indemnification for BNSF that is specific to negligence—it is broader in one sense and narrower in another. It is broader insofar as it extends to any claim, demand, expense, cost, or judgment for property loss or personal injury damage, and narrower insofar as the loss or damage must occur directly or indirectly by reason of Alcoa's breach of its track-clearance or other covenants. For the reasons that follow, we hold that the parties' approach of contractually allocating this particular risk of loss to Alcoa clearly and unequivocally demonstrates an intent that BNSF be fully indemnified in the event of a claim, even if its negligence was a contributing cause of injury.

Because of this different, explicit allocation of a risk approach, it is important to follow the *reasoning* of prior Washington decisions rather than rely on their negligence-oriented discussion of differently-designed indemnification provisions.

I. UNDER CASE LAW STRICTLY CONSTRUING THE TRIGGERING EVENT OF AN INDEMNIFICATION CLAUSE, THE TRIGGERING EVENT IN THIS CASE CLEARLY AND UNEQUIVOCALLY OCCURRED

A number of Washington decisions enforce the requirement that the intent to indemnify an indemnitee against its own negligence be clear and unequivocal by strictly construing the event that triggers the right to indemnity. Alcoa relies on language from some of these cases, but the reasoning of the cases does not help it.

In *Jones*, a masonry subcontractor's employee was injured when the flooring on which he was working collapsed due to a lack of shoring beneath. The contractor, not the subcontractor, was responsible for providing adequate shoring. The contractor nevertheless sought indemnity under a provision stating that the subcontractor agreed to indemnify the contractor from various categories of claims or loss "'arising out of, in connection with, or incident to the SUBCONTRACTOR'S performance of this SUBCONTRACT.'" 84 Wn.2d at 521.

The court attached importance to the triggering event being only the subcontractor's performance, not the contractor's performance. Finding the subcontractor's performance of its subcontract to be "the keystone on which indemnity turns," the court held that "unless an overt act or omission on the part of [the subcontractor] in its performance of the contract in some way caused or concurred in

causing the loss involved, indemnification would not arise." *Id.* at 521-22 (footnote omitted).

Three dissenting justices complained that this was *too* strict a construction, since even the subcontractor conceded that its worker's performing work at the jobsite was a cause-in-fact of the accident. In their view, it "does violence to the clear contractual intent of the parties to read into the indemnity provision a 'proximate cause' requirement." *Id.* at 525-26. Yet the majority in *Jones*, and later Washington decisions, defend a narrow reading of the triggering event as justified by the need for clear and unequivocal language that the parties intended indemnification to apply.

The approach was followed in *Dirk v. Amerco Marketing Co. of Spokane*, 88 Wn.2d 607, 565 P.2d 90 (1977), in which Dirk, a Moses Lake gas station operator and authorized U-Haul dealer, sought indemnification from Amerco for his cost of settling a lawsuit over an auto accident. The accident occurred when Dirk and his son, having obtained authorization from Amerco to do so, were using Dirk's pickup and a chain to tow a disabled U-Haul van from the interstate highway. The indemnification provision in the parties' contract provided that Amerco would hold its dealers harmless from liability for property damage or personal injury "arising out of accidents occasioned by the negligence of [Amerco] or by defects in U-Haul equipment . . . being rented or used under a duly executed U-Haul Rental Contract." *Id.* at 609. The trial court found that

Amerco had not been negligent, Dirk *had* been negligent, the U-Haul van had been defective, but the accident was not "occasioned by . . . defects in U-Haul equipment." *Id.* It reasoned that "'occasioned by'" should be strictly construed to mean "'caused by,'" and the accident was not caused by the defect in the U-Haul van. *Id.* at 610. The trial court held that the triggering clause did not clearly and unequivocally cover the event for which Dirk sought indemnification. The Supreme Court affirmed.

Strict construction of the triggering event was also the approach followed in *Calkins v. Lorain Division of Koehring Co.*, 26 Wn. App. 206, 613 P.2d 143 (1980). Plaintiff Calkins's employer had leased a crane from an affiliate of Lorain. The crane lacked a fail-safe mechanism that could prevent the crane from lowering its load to a point that could cause injury. Calkins was injured when a tank weighing several tons lowered onto his foot. Calkins sued the crane lessor, who settled with Calkins and then sued Calkins's employer. The crane lessor relied on an indemnity provision stating that "'[l]iability for injury, disability and death of workmen . . . *caused by the operation, handling or transportation of the equipment* . . . shall be assumed by the Lessee, and he shall indemnify the Lessor against all such liability.'" *Id.* at 207 (emphasis added).

The lessor argued that the trigger for indemnification—"'operation, handling, or transportation of the equipment'"—was broad enough to cover the crane's condition, but the trial court and appellate courts disagreed. *Id*. at 210. Applying strict construction,

13

this court held "[w]e construe the ambiguous provision in favor of [Calkins's employer], and hold that it did not indemnify [the lessor] for liability arising out of the condition of the crane." *Id.*

The Court of Appeals observed in *Calkins* that if an indemnification clause states that it includes indemnity for concurrent negligence, its coverage will be clear. In *McDowell*, the Supreme Court discussed that language in *Calkins* and clarified that a statement that indemnity extends to concurrent negligence will be sufficient, but is not necessary. An indemnity agreement will not "be held unenforceable for failing to expressly mention concurrent negligence." 105 Wn.2d at 53.

Applying the reasoning of these cases to section 5 of the ITA, its trigger for indemnification is claims for loss occurring directly or indirectly "by reason of any breach of the [track-clearing covenant] or any other covenant contained in this agreement." CP at 66. The trigger clearly and unequivocally applies to the Links' lawsuit over the accident with the pitch car that Alcoa placed foul of the track.

II.    CLEAR AND EQUIVOCAL INTENT DOES NOT DEPEND ON A REFERENCE TO INDEMNITEE NEGLIGENCE OR OTHER FORMULAIC LANGUAGE

Washington decisions finding a clear and unequivocal intent to indemnify against an indemnitee's own negligence have found that intent in a variety of indemnification approaches.

14

Most relevant here is *McDowell*, which involved a subcontract between the Austin

Company, as general contractor, and Canron Corporation, a steel erector, that included an

indemnity provision applicable to liability for personal injury to persons employed by

Canron or its subcontractors. The indemnity provision operated in favor of Austin and

the project owner, the Boeing Company. It provided (we retain the emphasis added by

the Supreme Court):

> (b) Subcontractor [Canron] agrees to indemnify and save harmless Owner
> and Austin against *all liability* for personal injury, including death resulting
> therefrom, sustained by any person directly or indirectly employed by
> Subcontractor or its subcontractors, *caused* or alleged to have been caused,
> directly or indirectly, by an act or omission, negligent or otherwise, *by
> Owner or Austin* or persons directly or indirectly employed by them, and to
> assume the defense of any action brought by persons so injured or their
> personal representatives against Owner or Austin to recover damages for
> such injuries.

105 Wn.2d at 49-50 (alteration in original). Relying on this court's decision in *Calkins*,

Canron argued that because the provision did not make clear that Canron would be

required to indemnify Austin and the owner for joint and several liability, which would

include liability for the indemnitees' concurrent negligence, it was unenforceable. *Id.* at

52; *and see McDowell v. Austin Co.*, 39 Wn. App. 443, 450, 693 P.2d 744 (1985)

(discussing Austin's joint and several liability).

The Supreme Court disagreed. It pointed out that "[p]arties are free to establish

liability instead of negligence as the triggering mechanism of an indemnity contract."

15

105 Wn.2d at 51. And because the language of the Austin-Canron indemnification agreement "provided fair notice to Canron that it would be liable for 'all liability' to Canron's employees caused by Austin's conduct," it was "not necessary" to include language stating that Canron would be an insurer for Austin's liability. *Id.* at 53.

The same analysis applies here. The parties were not required to, and did not, provide that negligence was the triggering mechanism for indemnification under section 5. Instead, section 5's trigger is liability directly or indirectly arising out of a breach of Alcoa's track-clearing or other covenants. The indemnification language of section 5 assures BNSF breach of contract damages, which include incidental and consequential loss. *See, e.g.*, 2 RESTATEMENT (SECOND) OF CONTRACTS § 347 (AM. LAW INST. 1981).[6]

By contrast, to construe section 5 as Alcoa does effectively writes Alcoa's track-clearing covenant out of the contract. It also gives no meaning to section 5's nonwaiver

---

[6] "[T]he injured party has a right to damages based on his expectation interest as measured by

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform."

2 RESTATEMENT § 347. "Incidental losses include costs incurred in a reasonable effort, successful or not, to avoid loss," and "[c]onsequential losses include such items as injury to person or property resulting from defective performance." *Id.* cmt. c.

16

paragraph. Alcoa argues that the nonwaiver language has no application to the Links'

damages because BNSF does not contend it was operating with knowledge of an

unauthorized reduced clearance at the time of the accident. But the nonwaiver language

reinforces Alcoa's contractual duty and BNSF's associated contractual "right to recover

for such damages to property or injury to or death of persons that may result [from a

breach]." CP at 67. "An interpretation of a contract that gives effect to all provisions is

favored over an interpretation that renders a provision ineffective, and a court should not

disregard language that the parties have used." *Snohomish County*, 173 Wn.2d at 840

(citing *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)); *and see Ross*,

64 Wn.2d at 490 ("We prefer interpretation of the contract that gives effective operation

to all its language.").

III. SECTION 5, NOT SECTION 7, APPLIES AS THE MORE SPECIFIC INDEMNIFICATION
OBLIGATION AND BECAUSE ALCOA'S CONSTRUCTION WOULD MAKE THE
INCLUSION OF SECTION 5 A USELESS GESTURE

"It is a well-known principle of contract interpretation that 'specific terms and

exact terms are given greater weight than general language.'" *Adler v. Fred Lind Manor*,

153 Wn.2d 331, 354-55, 103 P.3d 773 (2004) (citing 2 RESTATEMENT § 203(c)).

Because section 5 addresses indemnity for a liability that results directly or indirectly

from a breach of the track-clearing covenant, it is the more specific. The more general

section 7 serves to address indemnity and contribution when liability arises from some

other act or omission by Alcoa, its employees and agents. *See Anthony*, 316 F.2d at 866 (reasoning that "[d]oubtless" the contribution provisions in the parties' spur track agreement "are intended to cover situations not covered by the indemnity provisions," such as where an injury "had been caused by an obstruction negligently placed near the tracks but outside the specified track clearances").

As touched on above, if section 5 does not apply to liability for a claim like the Links' claim, it will never apply. Alcoa suggests that section 5 could apply "to circumstances of Alcoa's sole behavior/negligence," Resp't's Opposition Br. at 29-30, but as the Supreme Court pointed out in *Ross*, one can perceive of "no other kind of claim for which the Railroad could be indemnified" under a provision like section 5, "except one founded in whole or in part upon the Railroad's own negligence." 64 Wn.2d at 490.

IV.    CONCLUSION

In *Snohomish County*, the Supreme Court observed that "[p]arties have broad control over the provisions of their private contractual indemnity agreements." 173 Wn.2d at 856. Noting that the parties in that case were "commercial parties and nothing indicates any overreaching or one-sided bargaining power," it saw "no good reason not to enforce their agreement according to its terms." *Id.* at 855. Unlike parties in cases whose language it relies on, Alcoa agreed to assume a specific contractual duty and a broad, liability-based, indemnity obligation. We see no good reason to relieve it of the

No. 37900-1-III
*BNSF Ry. Co. v. Alcoa, Inc. et al.*

contractual liability it assumed and allow it to bear a lesser liability for comparative negligence.

We reverse the trial court's summary judgment ruling that section 7 of the ITA applies to the Links' lawsuit and settlement, and remand with directions to enter summary judgment in favor of BNSF.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.